The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

David R. DIAZ, Defendant–Appellee.

No. 89SA392.

Supreme Court of Colorado,
En Banc.

July 16, 1990.

G.F. Sandstrom, Dist. Atty., Patrick J. Delaney, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

Cecil L. Turner, Turner & Martin, P.C., Pueblo, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The district attorney brings this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1989 Supp.), to challenge an order from the Pueblo County District Court suppressing certain tangible evidence and statements. We affirm the district court's suppression order.

## I.

The defendant, David Diaz, was charged with the unlawful possession of cocaine, a schedule II controlled substance in violation of section 18–18–105(1)(a) and (2)(a), 8B C.R.S. (1986). Diaz filed a motion to suppress all evidence found and statements made during the course of his search and arrest on December 19, 1988. At the suppression hearing, the trial court heard testimony from Diaz; the arresting police officer, Officer Ruggieri; and a witness, Gregg Smith, who owned the Green Light Tavern where the arrest occurred. The trial court granted the motion to suppress after it made extensive findings which we will discuss below.

The parties stipulated that the arrest and search of Diaz were made without a warrant. Diaz's arrest on December 19 was based on information from three individuals that Diaz was involved in trafficking cocaine. None of these persons was identified or testified at the suppression hearing and all three were treated as confidential informants. The first informant was an individual who told Officer Ruggieri in April 1986 that Diaz was trafficking cocaine. The second informant contacted Officer Ruggieri approximately three weeks prior to the arrest and related that Diaz was selling certain quantities of cocaine out of the Green Light Tavern during particular hours. This informant described Diaz and claimed that he had seen Diaz selling cocaine on at least two occasions. On December 14, 1988, a fellow officer, Detective Lancendorfer, received information from a third confidential informant who stated that a male named "Dave" was selling certain quantities of cocaine inside the Green Light Tavern during the week between certain hours.

On December 19, 1988, at approximately 6:00 p.m., Officer Ruggieri was in the vicinity of the Green Light Tavern and observed Diaz walking toward and entering the Green Light Tavern. Officer Ruggieri personally knew of Diaz and had talked with him on an earlier occasion unrelated to this case. Officer Ruggieri contacted two uniformed officers who accompanied him into the Green Light Tavern, and they approached Diaz who was standing at the west end of the bar. Officer Ruggieri asked Diaz his name and asked if he could talk with him behind the bar. Officer Ruggieri, Diaz, and the two accompanying officers then stepped into an alcove behind the bar.

There is a dispute concerning the events which followed. Officer Ruggieri testified that he asked Diaz if he could look into his pockets for drugs and he was told to "go ahead" at which time Diaz raised his arms. Officer Ruggieri then reached into Diaz's front pockets and took out two paperfolds containing cocaine. Officer Ruggieri also searched Diaz's other pockets and found a plastic bag commonly used to store large quantities of cocaine, cards with names and numbers of drug related figures, as well as $272. Following the search, Officer Ruggieri verbally advised Diaz of his *Miranda* rights [1] and Diaz asked him who had turned him in to the police.

Diaz, on the other hand, testified that he was asked by Officer Ruggieri to step behind the bar at which time he was hand-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

cuffed and searched. Gregg Smith, the owner of the Green Light Tavern, testified that he was downstairs at the time of the initial contact by the police but as he came upstairs, he saw Officer Ruggieri facing Diaz who was then handcuffed and that while Diaz was handcuffed, Officer Ruggieri was in the process of searching Diaz's pockets.

Based on the seizure of the cocaine and other items from Diaz's pockets, Officer Ruggieri arrested Diaz. The trial court granted the defendant's motion to suppress evidence and statements. The court concluded that the prosecution failed to establish a constitutionally permissible investigatory stop, and that based on the totality of the circumstances, there was not probable cause to arrest Diaz on December 19, 1988. The issue on appeal is whether or not the police officers had probable cause to arrest Diaz on December 19, 1988 based on the information provided by the three separate informants. Alternatively, the prosecution argues that Diaz consented to the search rendering the search and seizure of contraband valid.

## II.

The district attorney contends that, when Officer Ruggieri entered the Green Light Tavern, he had sufficient information to establish probable cause to arrest Diaz for prior sales of cocaine. He argues that each of the three informants provided details which coincided with and corroborated that given by the other informants, thus ensuring reliability. As such, the district attorney claims that the search in question was a valid search incident to arrest. *See e.g. People v. Tufts*, 717 P.2d 485 (Colo.1986) (if probable cause to arrest exists, then search incident to arrest is valid).

■ The burden of proof is on the prosecution to establish the existence of probable cause to support a warrantless arrest. *Tufts*, 717 P.2d 485. Probable

cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been or is being committed by the person arrested. *Tufts*, 717 P.2d at 491; *Banks v. People*, 696 P.2d 293 (Colo.1985); § 16–3–102(1), 8A C.R.S. (1986). In determining whether there is probable cause to arrest, the totality of facts and circumstances known to the officer at the time of the arrest must be considered. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (rejecting the two-prong test of *Aguilar–Spinelli*); *People v. Quintana*, 785 P.2d 934 (Colo.1990); *People v. Arellano*, 791 P.2d 1135 (Colo.1990); *People v. Pannebaker*, 714 P.2d 904, 907 (Colo. 1986).[2]

■ The totality-of-circumstances analysis requires a court to consider whether the facts available to a reasonably cautious officer at the moment of arrest warranted the belief that an offense had been or was being committed by the person arrested. *People v. Hazelhurst*, 662 P.2d 1081, 1086 (Colo.1983); *see also Tufts*, 717 P.2d at 491. The totality-of-circumstances test places particular importance on the value of corroboration of details of an informant's tip by independent police work. *Gates*, 462 U.S. at 241–46, 103 S.Ct. at 2333–36; *see also People v. Grady*, 755 P.2d 1211 (Colo.1988). An informant's reliability, veracity, and basis of knowledge are still important factors to be considered in determining whether probable cause exists. *Grady* at 1215; *People v. Contreras*, 780 P.2d 552 (Colo.1989). Weakness in one area may be compensated by strength in another, "or some other indicia of reliability." *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329. Corroboration of an anonymous tip with facts learned by an investigating officer is sufficient for "the practical, common-sense judgment called for in making a probable-cause determination." *Id.*, 462 U.S. at 244, 103 S.Ct. at 2335.

**2.** *Gates, Pannebaker,* and other cases cited in this opinion involve the determination of probable cause in the context of issuance of a search warrant. In this case, we are addressing the issue of probable cause to arrest. Although the

ultimate conclusion may be different in each case, the quantum of proof needed for a finding of probable cause is the same. *See generally* 1 W. LaFave, *Search and Seizure*, § 3.1, at 544 (2d ed. 1987).

## III.

■ We now turn to the facts of this case, as found by the trial court, to determine whether the trial court erred in determining that Officer Ruggieri lacked probable cause to make a warrantless arrest of Diaz on December 19, 1988. The prosecution bases its probable cause argument on the information provided by three informants. The first source was an individual who told Officer Ruggieri in April of 1986 that Diaz was trafficking in cocaine. This informant provided no descriptive details or specific accounts, and Officer Ruggieri gave no information concerning the first informant's reliability or basis for his or her knowledge. We agree with the trial court in its evaluation that the information provided to Officer Ruggieri by the first confidential informant some two years prior to December 1988 was too remote in time and is of no benefit in determining whether or not Diaz had committed or was in the process of committing a crime. *See Tufts*, 717 P.2d 491.

As to the second confidential informant, Officer Ruggieri testified that he talked to the informant in the latter part of November 1988, when the informant said that Diaz was selling cocaine at the Green Light Tavern during "happy hour." This informant told Ruggieri that Diaz usually came to the tavern at about 4:30 p.m. and left the tavern by 7:00 p.m. during weekdays and sat at the west end of the bar. He further told Officer Ruggieri that Diaz would carry eight to twelve paperfolds containing one-quarter grams of cocaine located in his front pants pocket. The informant described Diaz as being six feet tall, clean looking, and "more white than Spanish" in

appearance. He said that Diaz lived at West 11th and Conley Streets in a house next to an alley. The confidential informant indicated that he had seen Diaz on two occasions when Diaz was in possession of cocaine and related that it was for sale, the last occasion being on December 14, 1988. There were other occasions when Diaz was seen in the Green Light Tavern but apparently was not involved in the selling of cocaine. In addition, the second informant rode with Officer Ruggieri and pointed out Diaz's address. He also mentioned that Diaz did not own a car but noted that a car parked in the driveway was owned by Diaz's girlfriend.

The defense strongly attacked the credibility of Officer Ruggieri by pointing out various inconsistencies in his testimony. The most significant disparity concerned the second informant. Officer Ruggieri testified that his contact with the second informant occurred in late November about three weeks prior to the defendant's arrest on December 19, 1988. Officer Ruggieri's police report, however, indicated that the second informant stated that he saw Diaz selling narcotics on December 14, only five days before his arrest. The district attorney attempted to explain this conflict by arguing that Officer Ruggieri had more than one contact with the second informant. The trial court rejected that assertion as not supported by the record and expressly found that Officer Ruggieri had only one contact in late November with the second informant. Thus, the trial court concluded that it would have been impossible for the second informant to describe criminal activity which did not occur until December 14.[3]

---

**3.** The trial court's written order provided as follows as to the second informant:

The Court likewise believes that the second confidential informant was not a reliable informant and did not provide information to the police officers to lead them to believe that the Defendant was in the possession of contraband or about to commit a crime on December 19, 1988. The confidential informant supposedly provided information to the police officers about an incident of which he would have absolutely no knowledge. Officer Ruggieri testified that he talked with the confiden-

tial informant the latter part of November 1988 at which time the confidential informant told him that he had last seen the Defendant engaged in a drug transaction on December 14, 1988. Said circumstance was totally impossible at that time. The prosecution suggests that the confidential informant had continuing conversations with Officer Ruggieri during the three week period of time. Defendant's Exhibit 1 [the police report dated December 20, 1988] contradicts the prosecution's interpretation of that report and also is contrary to the evidence produced at the hearing.

Accordingly, the trial court found the second informant to be unreliable and refused to credit information attributed to this informant. The court also emphasized that although the informant claimed that he had seen Diaz trafficking drugs on at least two occasions, there was no testimony explaining how the information was gained or why the information was considered reliable by the police. Moreover, the court noted that information provided to Officer Ruggieri concerning where Diaz lived and what color car his girlfriend drove were matters of general information to the community.

The third confidential informant spoke with a fellow officer, Detective Lancendorfer, five days prior to the arrest. This informant stated that a male named "Dave" was selling quarter, half, and gram quantities of cocaine inside the Green Light Tavern during the week between the hours of 4:30 and 6:30 p.m. The informant also told Detective Lancendorfer that Diaz did not have a car. The third informant did not relate that he or she had personally observed Diaz in possession of or selling cocaine and did not mention specific dates or times when the alleged transactions took place.

The trial court also found the third informant to be unreliable. The record is silent as to how the informant obtained his or her information and as to whether or not Officer Lancendorfer had had previous contact with this confidential informant and was able to assess his or her reliability. The trial court noted that there was "absolutely no independent corroboration" of the information by the officers.

■ Under these particular facts, we find that Officer Ruggieri lacked probable cause to arrest Diaz and that the trial court did not abuse its discretion in suppressing the evidence and statements. The trial court here was in the best position to observe and to balance the testimony at the hearing, the credibility of the witnesses, and to assess the evidence presented. Although the informants did corroborate each

other as to the fact that Diaz was trafficking cocaine and the second and third informants both attested to the fact that Diaz was selling cocaine at the Green Light Tavern during certain hours, evidence of the informants' reliability is lacking. At the suppression hearing, Officer Ruggieri did not demonstrate the reliability of the informants. Furthermore, Officer Ruggieri did not adequately explain during his testimony or in the police report how and when he was contacted by the second informant and whether or not their conversations were ongoing or occurred one time only.

■ The police may compensate for a deficiency in information pertaining to the informant's veracity or the reliability of the reported information by corroborating various details of the tip. *People v. Arellano*, 791 P.2d 1139. Here, however, there was little attempt by the police to corroborate the informants' stories. Officer Ruggieri testified that he saw Diaz enter the tavern and then called for backup officers. Therefore, the only corroboration which existed was the fact that Diaz was in the tavern at 6:45 p.m. at the west end of the bar. The second informant had stated that Diaz had frequented the tavern when he was not involved in trafficking cocaine. Although, in some circumstances, verification of seemingly innocent details contained in a tip from an informant can be sufficient to supply the requisite corroboration, we do not find that Officer Ruggieri's observations alone were sufficient to suggest that the informants had particularized knowledge. *See People v. Garcia*, 789 P.2d 190, 192–93 (Colo.1990). As such, Diaz's behavior did not indicate criminal behavior and there was no reason to believe that at this particular time Diaz was intending to sell cocaine.

The record indicates that both reliability and corroboration were lacking and under these facts we find that the trial court did not abuse its discretion in suppressing the evidence. A trial court's probable cause determination ordinarily should be given deference absent a finding of abuse of dis-

The plain reading of Defendant's Exhibit 1 indicates that the conversation between Officer Ruggieri and the second confidential informant took place one time only.

cretion. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331; *Tufts,* 717 P.2d at 491 (supreme court ordinarily will not disturb a trial court's finding that probable cause to arrest was lacking). Probable cause determinations based on the totality-of-the-circumstances are founded on the specific facts and circumstances of individual cases and therefore doubts as to the weight of the evidence and credibility of the witnesses should be resolved in favor of the trial court's determination. *See Quintana,* 785 P.2d at 939. Accordingly, we find that the trial court did not abuse its discretion in finding that no probable cause to arrest existed.

## IV.

 The prosecution argues in the alternative that Diaz consented to the search and that the situation was not so coercive as to render his consent invalid.[4] We disagree.

A police officer may search for incriminating evidence without a warrant when the person to be searched voluntarily consents. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Santistevan,* 715 P.2d 792, 795 (Colo. 1986). Consent is voluntary when it is the product of free and unconstrained choice and not the result of force, threat, or promise. *Id. People v. Elkhatib,* 632 P.2d 275 (Colo.1981); *see generally* 3 W. LaFave, *Search and Seizure,* § 8.2(b) at 181 (2d ed. 1987) (if police make a show of force at time consent is sought or if the surround-

ings are coercive in other respects, this is to be taken into account in determining whether consent was voluntarily given).

The trial court made detailed findings of fact which lead us to conclude that consent was not voluntarily given. The court noted that three police officers confronted Diaz and asked him if he would join them in another section of the bar. The court stated that "this use of a show of authority was sufficient to make it apparent to the Defendant that he was not free to ignore the officers and proceed on his way." It was the trial court's opinion that a seizure of Diaz was made at the time the officers contacted him. Furthermore the court found that while the words of the officers may have been in the form of a question, one in Diaz's position would have believed Officer Ruggieri's request to search Diaz's pockets to be an order.

Considering the facts and circumstances of this case and the findings of the trial court, we find that the prosecution has failed to meet its burden of persuasion that Diaz's consent to the search of his person was voluntary.

Accordingly, the trial court's order is affirmed.

4. Because we find that there was not a valid consent to search, we do not need to address whether the alleged consent was achieved pursuant to an "investigatory stop" or "consensual interview." *See People v. Trujillo,* 773 P.2d 1086, 1089 (Colo.1989) (the three general categories of police-citizen encounters consist of: 1)

arrest, 2) investigatory stop, and 3) consensual interview). Although the trial court found that neither a proper "investigatory stop" or "consensual interview" occurred, the parties have not briefed this issue on appeal or made any such argument.