(October 4, 1990)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANDREW POLK, Respondent.—Order, Supreme Court, New York County (Jeffrey Atlas, J.), entered June 29, 1988, which granted defendant's motion to suppress physical evidence and evidence concerning identification, unanimously reversed, on the law, the motion denied, and the matter remanded for further proceedings.

Although this was a close case, upon reviewing the facts, we find ourselves in disagreement with the decision of the hearing court to suppress. We reverse and hold that the evidence in this case, examined in its totality, is sufficient to establish probable cause, and further hold that defendant's motion should be denied as to both the physical and identification evidence at issue herein. *(People v Hicks,* 68 NY2d 234, 238 [1986]; *People v Bigelow,* 66 NY2d 417, 423 [1985].)

In December 1987, at the PATH station located at Ninth Street, a series of robberies had been committed by two men. Several of the victims, including Carl Langrock, who was robbed on December 31, 1987, gave the police descriptions of the two assailants.

At roll call on January 1, 1988, Port Authority Police Officers William Connors and Wayne Picone were told of a series of robberies committed in the Ninth Street PATH station and given a general description of the perpetrators. That description was of two light-skinned black men, six feet, one to two inches in height and 185 pounds in weight. The officers were also told what clothing the assailants had last been seen wearing and that one of the robbers would threaten the use of a weapon.

At 10:45 P.M. the same night, Connors observed Edmund Coles leaning over the turnstile, looking up and down the platform of that station. Two hours later, Connors, who was on patrol with Picone and Officer Peter Johnson, again saw Coles at the station. This time, Coles was standing at the top of a stairwell in a bend obstructed from view, while defendant was four or five steps down, on the opposite side of the stairs. This was the precise location of the most recently reported robbery, that of Langrock. The officers testified that both men were between six feet and six feet, two inches tall, weighed 185 pounds, appeared to be in their early to mid-twenties, and were wearing clothing similar to that described during the police roll call. While both men were black, only Coles was light-skinned; however, at the hearing, Picone described defendant as light-skinned.

The officers approached Coles and inquired as to the reason he was in the station. Coles, who acknowledged he had been in the station two hours earlier, told them he was waiting for his girlfriend to come from Hoboken, where she lived. However, upon further questioning, he could not provide her surname or address and stated that she had no phone. Moreover, when asked for identification, Coles produced a meal ticket from a shelter which bore not his name, but rather "Alberto Anderson"; this he attempted to explain by telling Connors that he used the two names at different times.

Meanwhile, defendant had approached the officers to ask what the problem was, telling the officers that he was with Coles. Defendant's explanation for their presence in the station was the same as that of Coles, except that he did not even know the alleged girlfriend's first name.

Picone, believing that the men matched the description of the robbers, called the desk officer to have him read and verify the description of the robbers. While Picone was on the telephone, Connors, also noting the similarity between the men before him and the robbery suspects previously described, continued to question the pair. Because they were becoming agitated and nervously looking at the exit, he believed they might flee or attempt to harm him. Connors frisked Coles, from whom he recovered a gravity knife—which is, of course, a weapon per se. (Penal Law § 265.00 [5]; § 265.01 [1].)

Once Picone had verified the description of the robbers and the gravity knife was recovered from Coles, both men were arrested, although no weapon or other property had been recovered from defendant in the course of the frisk. However, in the course of a subsequent search incident to arrest, conducted at the World Trade Center police desk, Carl Langrock's wallet, still containing his identification, was recovered from defendant. Although Langrock was unable to identify either Coles or defendant, a victim of one of the other robberies committed at the Ninth Street PATH station, James Dowd, positively identified both men.

Although Supreme Court credited the testimony of Picone and Connors, as well as that of Detective Marvin Gibson, who conducted the lineups, the court held that the People failed to establish probable cause for defendant's arrest, and accordingly suppressed the wallet recovered from defendant and the subsequent lineup identification. The court found the descriptions too general to support defendant's arrest and expressed particular concern about three discrepancies between the

complaint report and defendant's appearance—the fact that he was not light-skinned as described by Langrock; differences in the clothing described as opposed to that actually worn by defendant; and the fact that Langrock had stated that the robber with the hooded shirt (presumably defendant) was wearing a knitted cap, while Coles was wearing a cap but not a hooded shirt when arrested. The court, considering this along with the fact that 1½ to 2 days had passed since Langrock was robbed, concluded that it was not "more probable than not" that defendant was one of the robbers, and that suppression was thus appropriate.

We are of the view that under the facts and circumstances of this case, there was "information sufficient to support a reasonable belief that an offense has been or is being committed by the suspect", and that there was, in fact, probable cause to arrest defendant. *(People v Hicks,* 68 NY2d 234, 238, *supra; accord, People v Bigelow,* 66 NY2d 417, 423, *supra.)* While a "description which is meager and lacking in specificity may be insufficient, without more, to establish probable cause to arrest" *(People v White,* 117 AD2d 127, 131 [2d Dept 1986]; *People v Riddick,* 110 AD2d 787, 788 [2d Dept 1985]), there was substantially more here. First, while the description of the two assailants was general, the only true discrepancy between the description and the pair arrested was that defendant was black, but not light-skinned. This discrepancy was, in view of the additional information, minimal. *(See, People v Mingo,* 121 AD2d 307, 308 [1st Dept 1986].)

For instance, it was suspicious that Coles and, possibly, defendant were inexplicably at the station for some two hours. Moreover, the pair was out of view of passengers, a particularly salient fact, given the recent crime wave at the station, attributed to a duo, in the weeks immediately preceding the arrest and the fact the Langrock robbery had been perpetrated on that very stairwell. *(See, People v Milaski,* 62 NY2d 147, 150, 155-156 [1984] [holding illegal to detain defendant following sighting of parked car in high-crime area where there was neither any evidence of criminal conduct nor matching description of perpetrator of any crime].)

Furthermore, since the spat of robberies involved use or threatened use of weapons, it cannot be said that the fear for safety expressed by Connors was not based on reality; therefore the frisk conducted by Connors was justified. *(People v Paige,* 154 AD2d 318, 319 [1st Dept 1989].)* Once that frisk yielded the gravity knife, which has no legitimate use as a matter of law, there can be no question that there was

probable cause to arrest the men. *(See,* Penal Law § 265.00 [5]; § 265.01 [1]; *cf., People v Riddick,* 110 AD2d, *supra,* at 788 [no knife or stolen property found].)

While there is an argument that because a day and a half to two days had elapsed between the Langrock robbery and the arrest, the presence and conduct of the men at the station was nevertheless insufficient to elevate the officers' suspicion to the level of probable cause, the cumulative effect of the circumstances surrounding the arrest refutes that argument in the instant case. *(Cf., People v White,* 117 AD2d, *supra,* at 132 [no probable cause to believe defendant was the person who had committed a crime 15 minutes earlier at another Brooklyn subway station some six stops away from where he was apprehended in view of vagueness of description].)

Having found that the arrest was based upon probable cause, we hold that Langrock's wallet was duly recovered in a search incident to arrest. *(People v Troiano,* 35 NY2d 476, 478 [1974]; *Matter of Terrence G.,* 109 AD2d 440, 444-445 [1st Dept 1985].)* Similarly, the duly conducted lineup yielded an admissible identification. *(People v Paige,* 154 AD2d, *supra,* at 319; *see generally, People v Hawkins,* 55 NY2d 474 [1982].) Concur —Murphy, P. J., Ross, Carro and Rosenberger, JJ.