The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Vincent T. Mc COY, Defendant–Appellant.

No. 89CA0199.

Colorado Court of Appeals, Div. II.

Jan. 16, 1992.

Rehearing Denied Feb. 20, 1992.

Certiorari Granted June 29, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Linda Davison, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Betty Ann Bass, Special Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Vincent T. Mc Coy, appeals from a judgment of conviction on two counts of aggravated robbery. He argues that the police did not have probable cause for his arrest and, therefore, that the trial court erred in denying his motion to suppress evidence seized pursuant to that arrest. We reverse.

In February 1987, a jewelry store in Denver was robbed at gunpoint and a number of items of expensive jewelry were taken. Later that same month an officer of the New Orleans Police Department received a tip from a confidential informant that a black man, approximately 25 years of age,

"short [about 5'2"] and stout," had attempted to sell five pieces of very expensive jewelry to him at a price much under their real value.

The next day, another officer of the New Orleans Police received a call from a local jeweler that a "stout" black man, approximately 25 years of age, wearing a leather jacket with the word "Mc Coy" on the sleeve, accompanied by a black woman, had attempted to sell a "large amount" of very expensive jewelry at a very low price. The jeweler was looking at the defendant and his companion standing outside of the jewelry store at the time of the call. While the jeweler was still speaking with the police, he noted that the two persons were walking towards a nearby restaurant. The jeweler also noted that the man was wearing a large amount of gold jewelry around his neck.

A police officer went to the restaurant and saw defendant, whom he described as a "very stocky, short, black male," of the approximate age and wearing clothing as described by the jeweler. He was seated at a table with a black woman of approximately the same age. The officer approached the two and, without any prior questioning, arrested them both. Defendant was searched, and a black bag containing a considerable amount of expensive jewelry, as well as a hotel key, was discovered on his person.

After defendant and his companion were taken into custody, they were given *Miranda* warnings. Defendant declined to make a statement to the police.

However, defendant's companion informed the police that defendant had committed an armed robbery of a jewelry store in Denver and that other pieces of jewelry taken during the robbery, as well as the gun used, were located in the hotel room which had been jointly occupied by the two, the key to which had been seized from the defendant. Based on this information, the police obtained a search warrant for this room; the later search uncovered numerous items of jewelry taken in the Denver robbery and a revolver.

Defendant moved to suppress all the jewelry seized, both that found on his person and that in the hotel room, as well as the gun, claiming that the police lacked probable cause for his arrest and, therefore, that all of the evidence was the "fruit" of that illegal arrest. The trial court denied defendant's motion on the grounds that the facts known to the police at the time of defendant's arrest constituted probable cause for that action.

## I.

■ Defendant argues that the trial court erred in ruling that the police had probable cause for his arrest. Based on the undisputed facts, we agree.

■ The People have the burden of proving the existence of probable cause to support a warrantless arrest. Probable cause to arrest exists only if the facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been, or is being, committed by the person arrested. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *People v. Diaz*, 793 P.2d 1181 (Colo.1990). While it is not necessary that the arresting officer possess knowledge of facts sufficient to establish guilt, more than mere suspicion is required to provide probable cause for arrest. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978).

Because the standard of probable cause is substantially less than the quantum of evidence needed to support a conviction, only reasonable grounds, not a mathematical probability, to believe that the defendant participated in the crime in question must be demonstrated. *Banks v. People*, 696 P.2d 293 (Colo.1985). In addition, the totality of the facts considered can constitute probable cause even though no one fact, if viewed alone, would be sufficient. *People v. Eichelberger*, 620 P.2d 1067 (Colo.1980).

■ However, if the police have no information that a crime has, in fact, been committed, probable cause for an arrest does not exist. *People v. Quintero*, 657 P.2d 948 (Colo.1983).

In *Quintero*, for example, defendant's presence as a stranger in the neighborhood, his possession of a television set while waiting at a bus stop, and his claim that he purchased the set from someone in the neighborhood, was held not to satisfy the probable cause standard. This was so, according to our supreme court, because, at the time of the arrest:

> No evidence existed to establish that a crime had been committed.... The police did not learn who the owners of the T.V. set ... were until more than five hours after they arrested Quintero. Suspicion does not amount to probable cause.

Similarly, in *People v. Schreyer*, 640 P.2d 1147 (Colo.1982), the police had reasonable grounds to believe that defendant was the person reported to be engaged in suspicious activity. However, there existed no probable cause for his arrest because, like the arresting officers in *Quintero*, they had no information that allowed them to form a reasonable belief that a crime had actually been committed.

Here, there can be no question but that information that an individual is attempting to sell a quantity of jewelry at a price substantially below its fair market value can give rise to a *reasonable suspicion* that a crime has been committed. We conclude, however, that that fact, standing alone and without other information from which it may reasonably be inferred that the jewelry is illegally in the seller's possession, does not constitute probable cause for arrest. While such an attempted sale may authorize law enforcement agents to conduct an investigatory stop, *see Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971), it does not authorize them to make an arrest. *See People v. Quintero, supra.*

■ We conclude, therefore, that defendant's arrest here was not supported by probable cause and was, therefore, unlawful. Further, because the jewelry and hotel key found upon defendant's person was seized as a direct result of his illegal arrest, those items seized at that time should have been suppressed, and the trial court's refusal to do so constituted error.

■ Finally, we cannot conclude that the admission of this evidence was harmless. From the record, it appears that almost half of the stolen jewelry displayed to the jury was that which was obtained from defendant's person. In addition, defendant's actual possession of the stolen jewelry made it much easier for the People to link the defendant directly with the stolen items. Admission of such evidence, therefore, constituted prejudicial error.

## II.

We address defendant's other assertion of error because the circumstances upon which it is based may recur on retrial.

Defendant contends that the items seized in the hotel room pursuant to the search warrant should also have been suppressed. However, we conclude there are insufficient findings in this record to allow us to determine this issue.

■ The "fruit of the poison tree" doctrine requires that evidence obtained as a result of an unconstitutional arrest be suppressed. *Wong Sun v. United States, supra; People v. Madson*, 638 P.2d 18 (1981). This exclusionary rule was created primarily to deter unlawful police actions, *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), and applies both to the illegally obtained evidence itself, as well as to any derivative evidence. *People v. Schoondermark*, 759 P.2d 715 (Colo. 1988).

The basic test utilized in determining if evidence is the "fruit" of an unlawful arrest is "whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States, supra; see People v. Briggs*, 709 P.2d 911 (Colo.1985).

■ The question that must be addressed by the trial court before authorizing the admission of any of the items discovered in the hotel room at any new trial, therefore, is whether the companion's arrest was a "fruit" of the defendant's illegal arrest. That determination depends upon

whether the companion would have been arrested even if defendant had not or whether her arrest resulted solely from defendant's arrest and her presence with him at that time.

In the seminal *Wong Sun* case, the defendant, after being illegally arrested by the police, made statements that led the police to another individual. That individual then surrendered heroin to the police and noted that the defendant had delivered it a few days earlier. The Supreme Court held that the heroin could not be used by the prosecution against the defendant because it grew out of his initial unconstitutional arrest.

Here, therefore, if the companion would not have been arrested, except as a result of the defendant's arrest, then her statement, which led to the discovery of the jewelry and gun in the hotel room, must be considered "fruits" of defendant's initial illegal arrest.

On the other hand, if the police would have arrested the companion, irrespective of defendant's arrest, and even had he not been present, the evidence obtained in the hotel room cannot be considered a "fruit" of the defendant's illegal arrest. And, this would be true even if the companion's arrest was unlawful. Defendant has no standing to complain about the legality of his companion's arrest, but only may argue that her arrest resulted from his own unlawful arrest. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Wong Sun v. United States, supra; People in Interest of D.E.J.*, 686 P.2d 794 (Colo.1984).

The judgment is reversed, and the cause is remanded for a new trial.

REED, J., concurs.

STERNBERG, C.J., dissents.

Chief Judge STERNBERG dissenting.

I respectfully dissent.

In my view, the trial court's denial of the motion to suppress evidence was correct because the factors known to the police at the time of the arrest constituted probable cause. Hence, there being no other error, I would affirm the conviction.

Probable cause to arrest exists when all of the facts and circumstances within a police officer's knowledge are sufficient to support a reasonable belief that a crime has been committed by the person arrested. *People v. Quintero*, 657 P.2d 948 (Colo. 1983).

In determining the existence of probable cause the following considerations are relevant:

The substance of all definitions of probable cause is a reasonable ground for belief of guilt. But the quantum or quality of evidence needed to show probable cause for an arrest is different from that required to sustain a conviction.... In determining what constitutes probable cause for an arrest, the surrounding facts and circumstances within the knowledge of the arresting officer, which are indicative of the commission of a crime, are most significant. When an arrest is made by a police officer, his actions should not be measured by what might or might not be probable cause to an untrained civilian.... The standard must be that of 'a reasonable, cautious and prudent police officer' and must be judged in light of his training and experience.

*People v. Collman*, 172 Colo. 238, 471 P.2d 421 (1970). *See also People v. Rueda*, 649 P.2d 1106 (Colo.1982).

Here, the arresting officer was aware of two reports made within a 24–hour period describing attempts to sell a large amount of very expensive jewelry for substantially less than its actual value. The informants gave identical descriptions of the jewelry. Their description of the unique physical characteristics of the individual attempting to sell the jewelry—very short, stout, and young—also dovetailed.

The individuals who made these reports were persons whose experience lent credibility to their suspicions that the jewelry was stolen. The first was a confidential police informant who had worked in the gold business for 45 years and who, on several previous occasions, had provided reliable information involving criminal activity, including possession of stolen property. *See People v. Arellano*, 791 P.2d

1135 (Colo.1990) (demonstrated previous reliability of informant supports both his veracity and the reliability of new information provided by him). The second source was a jewelry store employee, who was alarmed by the discrepancies in the asking price and the obvious value of the jewelry he was being asked to purchase. The nature of the incidents was sufficiently suspicious that both men refused to buy the jewelry and communicated their suspicions to the police.

The majority concludes that the police had no probable cause to arrest the defendant because they had "no information that allowed them to form a reasonable belief that a crime had actually been committed." It is true that, at the time of the arrest, the New Orleans police officers had no knowledge of the Denver robbery that had occurred some two weeks earlier. Nevertheless, in my view, these police officers did have knowledge of a crime, to wit, an illegal transaction constituting possession of and attempting to cause others to purchase stolen property.

Just as it is a crime in Colorado to deal with stolen property, § 18–4–410, C.R.S. (1986 Repl.Vol. 8B), so too does Louisiana prohibit such conduct. La.Rev.Stat.Ann. § 14:69 (West 1986). Under that statute, an essential element of the crime of possession of stolen "things" is the defendant's knowledge that the things he accepted were stolen. Proof of this element, when it is based on circumstantial evidence, requires a determination that the evidence, viewed in a light most favorable to the prosecution, would permit a trier of fact to conclude beyond a reasonable doubt that every reasonable hypothesis of innocence has been excluded. *State v. St. Romain*, 505 So.2d 223 (La.Ct.App.1987). And, evidence showing that property was sold for substantially less than its market value is sufficient to prove that the defendant either knew or had reason to know the thing sold was stolen. *State v. St. Romain, supra.* See also *State v. Honeycutt*, 438 So.2d 1303 (La.Ct.App.1983).

Here, two men declined to purchase the jewelry because of their suspicion, based on the discrepancy between the price asked and the jewelry's value, that it was stolen.

Although the arresting officer did not directly observe criminal activity, he reasonably relied on these informants' information and on their fear of becoming parties to an illegal transaction resulting in their refusal to purchase the jewelry.

Furthermore, I do not find the situation here analogous to that in *People v. Quintero, supra.* If Quintero had offered to sell the TV for substantially less than its value, then the circumstances would be comparable, and I believe would have resulted in the *Quintero* arrest being found as proper.

Applying the standard of a reasonable, cautious and prudent police officer judged in the light of his training and experience, I conclude that the arresting officer was in possession of sufficient facts to justify his belief at the moment of arrest that the defendant had committed a crime. Consequently, he had probable cause to execute a warrantless arrest, and the evidence obtained in connection with that arrest was properly held to be admissible.