The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Chester Thomas DAVIS,
Defendant–Appellee.

No. 95SA36.

Supreme Court of Colorado,
En Banc.

Sept. 25, 1995.

**2**

G.F. Sandstrom, District Attorney, Tenth Judicial District, M. Katherine Howard, Deputy District Attorney, Pueblo, for Plaintiff–Appellant

David F. Vela, Colorado State Public Defender, Paul C. Crane, Deputy State Public Defender, Pueblo, for Defendant–Appellee.

Justice SCOTT delivered the Opinion of the Court.

The People bring this interlocutory appeal seeking review of an order by the Pueblo County District Court (trial court) suppressing evidence obtained from a search incident to a warrantless arrest.[1] After a hearing, the trial court concluded there was no probable cause to arrest the defendant and suppressed the evidence. We affirm the trial court's ruling.

I

A

The facts in this case are undisputed. On September 16, 1994, Officer Thomas Rummel of the Pueblo Police Department was driving his squad car on routine patrol when he approached a Loaf–N–Jug convenience store at 18th and Lambert Streets. While driving northbound on Lambert Street, Rummel saw the defendant, Chester Davis ("defendant" or "Davis"), sitting near the store. At the same time, Rummel observed a woman leaving the store and walking towards her car. Rummel then saw Davis get up and approach the woman. Rummel concluded that Davis was saying something to the woman "because she turned around to look at Davis and then turned quickly away and walked towards her car."

Based solely on the foregoing, Rummel concluded that Davis was "asking for money" or panhandling. Deciding to investigate, Rummel radioed his dispatcher to advise her that he was about to initiate contact with a male who appeared to be panhandling. The dispatcher informed him that on the previous day a caller reported that a man had been attempting to sell marijuana at the same location. The dispatcher gave a "clothing description" of the man. Rummel determined that Davis matched the description given by the dispatcher.

Rummel parked his car, exited, and contacted the defendant. Upon initiating contact, Rummel asked Davis for some form of identification. The defendant gave Rummel a Colorado identification card and asked why he was being questioned. Rummel responded that it appeared to him that the defendant had been panhandling in violation of the Pueblo municipal loitering law. Rummel asked Davis if he had been panhandling or attempting to sell drugs. Davis answered "no" to both questions. On further questioning, Davis explained that the woman Rummel observed leaving the store had "seen him sitting there and asked him if he was hungry and had given him some money."

---

**1.** We have jurisdiction over this matter pursuant to § 16–12–102(2), 8A C.R.S. (1994 Supp.) and C.A.R. 4.1.

Rummel informed Davis that he believed the defendant had been panhandling and loitering and asked if he could search the defendant's bags. Davis refused to consent to a search. When asked a second time if he had been panhandling, Davis replied that he had not. Nonetheless, Rummel told Davis that he believed he had been panhandling and informed Davis he was under arrest for loitering. Rummel ordered the defendant to place his hands up on a wall so he could conduct a pat down search. The defendant refused and took off running.

Rummel chased Davis a short distance, apprehended, and handcuffed him. The defendant and his bags were taken to the police station for processing. At the police station, Rummel conducted an inventory search of the defendant's bags. During the search, the police discovered several freezer bags of a substance later identified as marihuana. Davis was charged with one count of unlawful possession of marihuana with intent to distribute,[2] one count of unlawful possession of marihuana with intent to distribute (second offense),[3] and one count of possession of eight ounces or more of marihuana.[4]

## B

Davis filed a motion to suppress the evidence obtained as a result of the search incident to his arrest for loitering. At the evidentiary hearing on Davis's motion, the People called two witnesses: Rummel; and Beverly Oshel, the customer who reported seeing a man selling marihuana at the same store the day before. Oshel testified that, as she exited the store, she saw a group of children approach a man sitting outside the building. Oshel testified that she saw several children hand the man a bottle of Pepsi and then asked him if he had some "weed." She stated that the man replied, "yes, in my knapsack," and reached for his bag. When Oshel arrived at home, she called the police

to report the incident and describe the man she saw.

During her testimony, Oshel repeated the description she gave the police:

Q. How did you describe him, to the best of your knowledge?

A. The best of my knowledge, he had long hair and a beard. He was in fatigues. He had a duffle bag and a back bag that they usually use in the army.

At no time during the hearing did Oshel identify Davis as the man she described.

Rummel was called to testify after Oshel. During his testimony he stated he heard Oshel's testimony and agreed that her description in court was the same description the dispatcher gave him over the radio. Rummel also testified that the dispatcher asked him if Davis "matched [the] description" and he told her "he did." Although Rummel concluded Davis matched the description given by Oshel, he described Davis in his testimony as "a transient" dressed "in ragged, soiled clothing."

After hearing the testimony of the witnesses, the trial court determined that Rummel's initial contact with Davis was appropriate based on the information he received from the police dispatcher and from his initial observations of the defendant. However, the trial court concluded that there was no probable cause to arrest Davis for the crime of loitering.[5] As a consequence, the court ruled that the search of the defendant's bags after the unlawful arrest violated both state and federal law and that the evidence seized during the course of the search must be suppressed.

## II

Both the United States Constitution and the Colorado Constitution guarantee the right of the people to be secure in their persons against unreasonable seizures. U.S.

---

2. § 18–18–406(8)(b), 8B C.R.S. (1994 Supp.).

3. § 18–18–406(8)(b), 8B C.R.S. (1994 Supp.).

4. § 18–18–406(4)(b), 8B C.R.S. (1994 Supp.).

5. We note that Davis was not charged with loitering or resisting arrest. The People did not argue before the trial court that the evidence was admissible as a search incident to an arrest of Davis for the new crime of resisting arrest. Because that argument was not raised below, we elect not to address it for the first time here.

Const. amends. IV, XIV; Colo. Const. art. II, § 7; *People v. Hopkins,* 870 P.2d 478, 480 (Colo.1994). Ensconced in the Fourth Amendment and our own constitution is the guarantee that police must have probable cause before they can subject a person to a seizure or the deprivation of liberty that results from an arrest. *Gerstein v. Pugh,* 420 U.S. 103, 111–12, 95 S.Ct. 854, 861–62, 43 L.Ed.2d 54 (1975); *People v. Schreyer,* 640 P.2d 1147, 1150 (Colo.1982); *People v. Wolf,* 635 P.2d 213, 217 (Colo.1981). We held that while a police officer may have sufficient information for a temporary detention based on a reasonable suspicion that the defendant may have committed a crime, such an intrusion, however, must be "limited to determining an individual's identity or obtaining an explanation of his behavior." *Schreyer,* 640 P.2d at 1150. Any greater detention amounts to an arrest which must be supported by probable cause. *Id.*

█ We recently addressed the constitutional standard of probable cause to arrest in *People v. McCoy,* 870 P.2d 1231 (Colo. 1994), and held that the totality of the circumstances test should be applied to the particular facts:

> "Probable cause to arrest exists when the objective facts and circumstances available to a reasonably cautious officer warrant the belief that an offense has been or is being committed by the person arrested." That is, probable cause to arrest requires that at the time an arrest is made the police have probable cause to believe a crime has been or is being committed and probable cause to believe the person to be arrested has committed or is committing the crime. "In determining whether there is probable cause to arrest, the totality of the facts and circumstances known to the officer at the time of arrest must be considered."

*Id.* at 1235 (citations omitted). Under the totality of the circumstances test "facts known to the arresting officer" must "*war-*

*rant* a belief that an offense has been or is being committed by the person to be arrested." *Id.* (emphasis added). Suspicion alone does not amount to probable cause. *Id.* at 1236 (citing *People v. Quintero,* 657 P.2d 948, 950 (Colo.1983)).

█ Until a police officer has information sufficient to establish probable cause to arrest without a warrant, police activity cannot lead to a greater intrusion than an investigatory stop.[6] *Schreyer,* 640 P.2d at 1150. The burden of proof is on the prosecution to establish the existence of probable cause to arrest without a warrant. *Id.* Hence, unless the facts and circumstances known to an arresting officer at the time of the arrest amount to probable cause, a seizure of a citizen effecting an arrest is unreasonable and violates rights protected by our state and federal constitutions. As a consequence, evidence obtained as a result of an unlawful arrest must be suppressed. *Id.* at 1149.

Courts have uniformly required an objective standard for determining probable cause. *People v. Gouker,* 665 P.2d 113, 117 (Colo.1983) (citing *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (Stevens, J., concurring)); *see also Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Rueda,* 649 P.2d 1106 (Colo.1982); Wayne R. LaFave, *Search & Seizure* § 3.2(b) (1995).

### III

The defendant contends that the facts and circumstances known to Rummel at the time of the arrest were insufficient to meet the requirements of probable cause and therefore the marihuana found as a result of the search must be suppressed as fruit of an illegal arrest. We agree.

---

**6.** Under certain circumstances, an officer may temporarily detain an individual with less than probable cause for the purpose of questioning. Such an intrusion, an investigatory stop, may occur when (1) the officer has a reasonable suspicion that the individual committed or is about to commit a crime, (2) the purpose of the detention is legal, and (3) the character of the temporary detention is reasonable when considered in light of the purpose for the stop. *Stone v. People,* 174 Colo. 504, 509, 485 P.2d 495, 497 (1971).

## A

■ Davis was arrested for violation of a Pueblo municipal ordinance prohibiting loitering or panhandling.[7] Pueblo County Municipal Code § 11–1–202 provides, in part:

(1) Definitions. When used in this section:

(A) "Loitering" or "loiter" shall mean remaining idle in essentially one location, to be dilatory, to tarry, and shall include but not be limited to standing around, sitting, kneeling, sauntering or prowling.

(B) "Begging" or "beg" shall mean the solicitation of money or items of value from passersby without services or items of value being offered or tendered in consideration therefor.

(2) It shall be unlawful for any person to loiter:

(A) with the intent to beg or for the purpose of engaging in begging; or

(B) in a manner which obstructs any public street, highway or sidewalk or entrance to a public facility by hindering, impeding or tending to hinder or impede the free and uninterrupted passage of vehicles, traffic or pedestrians[.]

Pueblo, Co., Ordinance No. 5459 (Feb. 22, 1988).

To violate this provision, the defendant must have been loitering with the intent to beg, or have been engaged in begging. Rummel only observed Davis and the woman while driving his patrol car into the Loaf–N–Jug parking lot. He did not watch Davis over an extended period of time or see Davis encounter any other person. His observations were limited to witnessing what was a brief conversation between Davis and the woman. There is no evidence in the record to indicate the nature of the conversation, who initiated the conversation between Davis and the woman, or that Rummel overheard the conversation. Additionally, Rummel admitted he did not question the woman. When he questioned Davis, he was told that the conversation was initiated by the woman and that she had offered Davis money for food.

In *People v. Greer*, 860 P.2d 528 (Colo. 1993), a police officer, engaged in surveillance and not a momentary observation, saw defendant Greer getting out of her car in a parking lot adjacent to an establishment which was frequently the location for narcotics sales. The officer saw three men approach her. While Greer's hands and body were obscured from the officer's sight, the officer could see her face and testified that she appeared to be having a conversation. The officer was unable to hear the conversation and could not determine whether it was related to drugs or other activities. At one point, the officer observed Greer bend her elbow and as the men left he observed one man placing a single bill of currency into his pocket. However, the officer did not see any exchange take place between Greer and any of the men and did not see Greer give the currency to one of the men. After the men left, Greer got into her car and drove away. We held that under the totality of those circumstances the trial court's ruling that the officer did not have even a reasonable articulable suspicion to believe a drug transaction had occurred was supported by the record. *Id.* at 532.

*Greer* did not involve a review of a probable cause determination. It was decided under our reasonable suspicion standard, which is a less stringent standard. As in *Greer*, the record in this case supports the trial court's determination that the arrest was made without probable cause. At the time of Davis's arrest Rummel acted upon his observation that Davis approached a woman in apparent conversation wherein the woman gave Davis "some sort of look" then walked away. The court found that Rummel never contacted the woman to ascertain the substance of the conversation and noted that "endless" scenarios could be imagined as to the nature of Davis's conversation with the woman. Moreover, we find lacking Rummel's reliance upon information that Davis may have been the person reported at the Loaf–N–Jug the day before

---

7. Although Davis was charged with crimes related to the possession of marihuana, the record is clear that his arrest was effected based upon the loitering ordinance. Rummel testified: "I asked him again if he had not been panhandling. He stated he was not. I then placed him under arrest for loitering, telling him I believed that was in fact what he was doing."

purportedly selling drugs. As noted by the trial court, the mere fact Davis might have been at the same convenience store on the previous day selling drugs was not sufficient evidence to establish probable cause for loitering.

In part, Rummel based his suspicion that Davis had been engaged in begging upon Davis's attire and appearance. Rummel testified that when he first saw Davis, he assumed Davis was "a transient" because he was wearing "ragged, soiled clothing," and later determined he was the same "transient type" described by the dispatcher as attempting to sell marihuana the day before.

However, Rummel's description of Davis differs significantly from the person described by Oshel, the customer who filed a report the day before. Based on Rummel's own testimony, the man described by the dispatcher was not identical to Rummel's description of Davis.

In any event, as the trial court pointed out, no valuable conclusion may be drawn as to what a person's activity is simply by the way he or she is dressed. In *McCoy*, we noted "[n]either the defendant's physical characteristics nor his attire contributes to a conclusion that a crime had been or was being committed." *McCoy*, 870 P.2d at 1238. To conclude otherwise would alter the objective standard applied in probable cause determinations, which we declined to depart from previously, *People v. Gouker*, 665 P.2d at 117, and would permit arrests based on bare suspicions and often unwarranted subjective determinations.

Finally, there is no evidence in the record to indicate Rummel saw Davis in any way obstructing, hindering, or impeding the free flow of pedestrian or vehicular traffic. Instead, the only conduct offered to support Davis's arrest was that the defendant appeared to have engaged in a conversation with a woman leaving the store.

### B

We agree that Rummel had a reasonable suspicion to believe Davis was the same person a customer reported to police the day before for selling drugs and that,

together with the conduct Rummel observed from his patrol car, he had a sufficient basis to momentarily detain Davis to conduct an investigatory stop. Nevertheless, the information known to Rummel at the time of the arrest at best established reasonable suspicion that Davis may have committed a crime, perhaps permitting an investigatory stop. After the stop, however, the only additional information obtained by Rummel, i.e., Davis's identity and his denial that he was panhandling when viewed under the totality of the facts and circumstances, was not sufficient to give rise to probable cause that Davis was loitering.

### IV

The record therefore supports the trial court's determination that the facts and circumstances known to the arresting officer here evinced no more than mere suspicion of criminal activity. Hence, there was no probable cause to support an arrest for violation of the loitering ordinance. Accordingly, we affirm the trial court's order suppressing evidence seized in connection with a warrantless arrest made without probable cause.

VOLLACK, C.J., dissents, and MULLARKEY, J., joins in the dissent.

Chief Justice VOLLACK dissenting:

I disagree with the majority's conclusion that the facts and circumstances known to the arresting officer at the time of the arrest were not sufficient to give rise to probable cause that the defendant, Chester Davis (Davis), was loitering. Maj. op. at 4, 6. I dissent because I believe that the officer had probable cause to arrest Davis for loitering based upon his observations at the Loaf–N–Jug combined with the information received by the officer that on the previous night, a female customer of the convenience store had seen a "transient type male" at that location who reportedly had been attempting to sell marihuana and who exactly matched the defendant's description. Further, I disagree with the majority's reliance upon *People v. Greer*, 860 P.2d 528 (Colo.1993), since *Greer* is not dispositive as to the circumstances surrounding the search here, and neither

addresses a probable cause determination nor presents a factually similar situation. Maj. op. at 5–6. Because I conclude that the officer had probable cause to arrest Davis, I would reverse the district court's order suppressing the marihuana seized in connection with Davis' arrest.

## I.

The following facts were disclosed at the suppression hearing. Officer Thomas Rummel of the Pueblo Police Department was on routine patrol when he approached a Loaf–N–Jug convenience store. Officer Rummel testified that he observed Davis sitting on the ground at the corner of the Loaf–N–Jug and that he had reason to believe that Davis was panhandling. Davis was situated on several duffle bags outside the store where he was able to observe people entering and leaving the store.

Officer Rummel testified that he noticed a female customer exiting the store and walking towards her car. According to Officer Rummel, Davis lifted himself up from the ground and approached the woman. Officer Rummel observed Davis engage in a conversation with the woman and stated that he "could tell [that Davis] was saying something to her because she turned around to look at Davis and then turned quickly away and walked towards her car." Officer Rummel additionally testified that he believed that Davis was "asking for money."

Officer Rummel radioed the dispatcher to advise her that he was planning to contact a male who appeared to be panhandling. The dispatcher then informed him that a female customer of the same store had called the Pueblo Police Department the previous evening about a "transient type male" at that location who reportedly had been attempting to sell marihuana. The dispatcher described to Officer Rummel the physical characteristics of the male that the woman had seen. The customer had reported that as she exited the store, she observed a group of neighborhood children approach a man with long hair and a beard, wearing army fatigues, who was sitting on top of two Army/Navy duffle bags outside the Loaf–N–Jug. The customer had heard the children ask the man if he had any "weed," to which he replied, "Yes, in my knapsack," and then reached for his knapsack.

Based upon this incident, Officer Rummel determined that the defendant matched this description given. He subsequently exited his patrol car and approached the defendant. Officer Rummel informed Davis that it appeared to him that Davis had been panhandling in violation of the municipal loitering law and requested that he produce identification. Officer Rummel asked Davis if he had been panhandling or attempting to sell drugs. Davis answered "no" to both questions. According to Officer Rummel, Davis explained that as a female customer was leaving the store, she saw him sitting there and asked him if he was hungry and then handed him some money. Officer Rummel testified, however, that "[t]hat's not at all what [he] had seen occur."

At that point, Officer Rummel expressed to Davis that he believed that Davis had been panhandling, and asked Davis whether he could search his duffel bags. Davis refused to consent to a search. Officer Rummel subsequently placed Davis under arrest for loitering and requested that Davis place his hands up on the wall so he could perform a pat-down search. Davis refused to comply. After Officer Rummel asked him several times to comply with this request, Davis took off running.

Officer Rummel chased him a short distance, apprehended and handcuffed him. Officer Rummel escorted Davis to the police station where an inventory search was performed on his duffel bags. As a result of this inventory search, Officer Rummel discovered several large freezer bags filled with marihuana. Davis was charged with one count of unlawful possession of marihuana with intent to distribute,[1] one count of unlawful possession of marihuana with intent to distribute (second offense),[2] and one count of possession

1. § 18–18–406(8)(b), 8B C.R.S. (1995 Supp.).

2. § 18–18–406(8)(b), 8B C.R.S. (1995 Supp.).

of eight ounces or more of marihuana.[3]

Davis filed a motion to suppress the evidence obtained as a result of the inventory search incident to his arrest. The district court concluded that although Officer Rummel's initial contact with Davis was appropriate based upon the information the officer had received from the dispatcher and from his initial observations of the defendant, the officer did not have probable cause to arrest the defendant for the crime of loitering. Specifically, the district court stated:

I just have a difficult time saying because this person is dressed this way, therefore this person must be engaging in this type of activity. I just can't make that jump.... Dress is a very, very individual type thing. Some people prefer to dress in $1200 Armani suits. Other people are relaxed in how they dress. Some people don't place a great deal of priority in terms of dress. I just think it's too vague. I can't find that I could draw any valuable conclusions as to what a person's activity is simply on the way they're dressed.

. . . .

The fact that he might have been at this Loaf and Jug the day before, I don't think I can place a whole lot of value in that, because that's what Loaf and Jugs want you to do. They want you to go to visit them as often as you possibly can.

Consequently, the district court suppressed the evidence seized as a result of the inventory search.

## II.

Davis was arrested for violation of a Pueblo municipal ordinance prohibiting loitering or panhandling. Pueblo County Municipal Code § 11–1–202 states:

(1) Definitions. When used in this section:

(A) "Loitering" or "loiter" shall mean remaining idle in essentially one location, to be dilatory, to tarry, and shall include but not be limited to standing around, sitting, kneeling, sauntering or prowling.

(B) "Begging" or "beg" shall mean the solicitation of money or items of value from passersby without services or items of value being offered or tendered in consideration therefor.

(2) It shall be unlawful for any person to loiter:

(A) with the intent to beg or for the purpose of engaging in begging; or

(B) in a manner which obstructs any public street, highway or sidewalk or entrance to a public facility by hindering, impeding or tending to hinder or impede the free and uninterrupted passage of vehicles, traffic or pedestrians....

Probable cause exists when the officer has objective facts and circumstances available at the time of the arrest to warrant the belief that the defendant has committed or is committing an offense. *People v. McCoy*, 870 P.2d 1231, 1235 (Colo.1994); *People v. Thompson*, 793 P.2d 1173, 1175 (Colo.1990). "In determining whether there is probable cause to arrest, the totality of the facts and circumstances known to the officer at the time of the arrest must be considered." *People v. Diaz*, 793 P.2d 1181, 1183 (Colo.1990). Probable cause may be based on the personal observations of the arresting officer, or on information provided to him by fellow officers or others. *See, e.g., Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *People v. Chavez*, 632 P.2d 574 (Colo.1981).

A police officer may have probable cause to effect a warrantless arrest where he observes a suspect at the scene of the crime, and the suspect's appearance matches a sufficiently detailed description of the perpetrator of which the officer has knowledge. *People v. White*, 117 A.D.2d 127, 503 N.Y.S.2d 59, 62, *appeal denied*, 68 N.Y.2d 818, 507 N.Y.S.2d 1036, 499 N.E.2d 885 (1986); *see, e.g., United States v. Zimple*, 318 F.2d 676, 679 (7th Cir.) (upholding warrantless arrest based on observation of conduct that supported reasonable belief that suspect had committed burglaries), *cert. denied*, 375 U.S. 868, 84 S.Ct. 128, 11 L.Ed.2d 95 (1963); *People v. Polk*, 166 A.D.2d 177, 560 N.Y.S.2d 428, 430 (holding that the officers had probable

---

3. § 18–18–406(4)(b), 8B C.R.S. (1995 Supp.).

cause to arrest the defendant and his accomplice who were found loitering in a stairwell of a subway station based upon the similarity between their physical appearance and the descriptions given of the duo that had committed a series of armed robberies in the same subway station), *appeal denied*, 76 N.Y.2d 1023, 565 N.Y.S.2d 774, 566 N.E.2d 1179 (1990).

In the present case, the female customer of the Loaf–N–Jug provided a physical description of the defendant to the police department which was specific in detail and exactly matched the defendant's appearance as seen by Officer Rummel. Officer Rummel described Davis as "a transient" based upon the "ragged, soiled clothing" that Davis was wearing. Officer Rummel concluded that Davis was the same "transient" that the female customer had identified the previous night as attempting to sell marihuana at the Loaf–N–Jug.

I agree with the majority that wearing army fatigues and maintaining an unkempt appearance does not necessarily imply that a person is loitering as opposed to being homeless. In my view, however, the majority, in affirming the district court's ruling, misconstrued the weight Officer Rummel placed on Davis' appearance. Officer Rummel did not assume that Davis' disheveled appearance suggested that he was committing the crime of loitering. Rather, I believe that the officer had probable cause to arrest Davis for loitering based upon his observations at the Loaf–N–Jug combined with the information received by the officer that the previous night, a female customer of the convenience store had seen a "transient type male" at that location who reportedly had been attempting to sell marihuana and who exactly matched the defendant's description.

Further, contrary to the district court's finding, in my view, the fact that Davis was sitting on his duffle bags *outside* the Loaf–N–Jug on at least two consecutive nights satisfies the definition of loitering in the municipal code.

Officer Rummel had a clear view of Davis. He observed Davis approach a female customer and believed that Davis "was saying something to her because she turned around to look at Davis and then turned quickly away and walked towards her car." Officer Rummel additionally testified that he believed that Davis was "asking for money." [4] The officer's assessment of the foregoing evidence, when viewed against Davis' explanation that the female customer saw him sitting there, asked him if he was hungry and then handed him some money, rendered it more probable than not that Davis had been panhandling.

I believe that the officer acted appropriately in initially contacting Davis. I further believe that, based upon the facts and circumstances known to Officer Rummel, he had probable cause to arrest him for loitering.

Accordingly, I dissent.

I am authorized to say that Justice MULLARKEY joins in this dissent.

---

**4.** In my view, the majority's reliance on *People v. Greer*, 860 P.2d 528 (Colo.1993), is misplaced since the issue of probable cause was not implicated. Rather, in *Greer*, this court held that the police did not have a *reasonable and articulable suspicion* that a drug transaction had occurred as would justify an *investigatory stop* of the defendant. Further, I disagree with the majority's contention that the present case is factually similar to the facts in *Greer*. Maj. op. at 4. In *Greer*, the officer was patrolling *on top of the roof of the Cloud Nine Bar* and was keeping a lookout for narcotics sales in the parking lot. While on the roof, the police officer observed the defendant leave her car and noticed three men approach her. Based upon the officer's position on the roof, he was neither able to view the defendant's body and hands which were totally obscured by one of the men nor able to see the facial expressions or gestures of the participants in the conversation. In contrast, in the present case, Officer Rummel was able to see clearly Davis and the female customer as he engaged her in a conversation. Although Officer Rummel was unable to hear the substance of the conversation, he was able to observe the woman's reaction.