The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

David Wilder TUFTS, Defendant-Appellee.

The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Paul Joseph DAVIDSON, Defendant-Appellee.

Nos. 85SA138, 85SA139.

Supreme Court of Colorado, En Banc.

April 14, 1986.

486

Alexander M. Hunter, Dist. Atty., John M. Haried, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

Carl F. Manthei, Boulder, for defendant-appellee, David Wilder Tufts.

Peter Schild, Boulder, for defendant-appellee, Paul Joseph Davidson.

ERICKSON, Justice delivered the Opinion of the Court.

This is an interlocutory appeal by the prosecution from an order suppressing evidence in a narcotics case. We reverse and remand for further proceedings.

### I.

Defendants, David Wilder Tufts and Paul Joseph Davidson, are charged with possession and sale of a schedule II controlled substance and conspiracy to sell a schedule II controlled substance. § 18–18–105, 8 C.R.S. (1985 Supp.). The defendants filed motions to suppress which were granted by the trial court. The facts necessary to the resolution of this appeal were developed at the suppression hearings held on February 21, March 21, and April 11, 1985. Charles Evans, a special agent for the Federal Bureau of Investigation, testified that citizen-informant Steve MacLaskey told him that he knew an individual named James Russell who desired to sell eight ounces of cocaine. On September 17, 1984, MacLaskey met Russell at a Boulder restaurant, while Evans waited outside the restaurant. Evans observed the two men talking for about one-half hour before he was introduced to Russell by MacLaskey. Evans testified that after Russell departed, MacLaskey said he told Russell that Evans was interested in purchasing cocaine.

On September 19, MacLaskey informed Evans that Russell had called and said that his supplier would bring the cocaine from Denver to Boulder the next day. Evans also learned that Russell was having credit problems with his supplier, and that the supplier had taken Russell's truck as collateral.

Shortly before 9:00 a.m. on September 20, Russell called MacLaskey in Denver and asked him to come to Boulder. Russell said his supplier was driving from Denver to Boulder with the cocaine. MacLaskey communicated this information to Agent Evans, who told MacLaskey to meet him at his office in Boulder. MacLaskey arrived at about 10:00 a.m. and called Russell at his residence on 5450 Tenino Avenue in Boulder. Russell told MacLaskey to meet him in the parking lot of a nearby Safeway store. At approximately 10:15 a.m., police officers initiated air and ground surveillance of the house at 5450 Tenino Avenue. Fifteen minutes later, officers observed Russell leave the house and followed him as he drove to several stores and restaurants in Boulder and then to the Safeway parking lot. Russell drove through the lot and stopped to make a telephone call but returned to the house at 5450 Tenino Avenue prior to the arrival of MacLaskey and Evans. At approximately 11:00 a.m., surveillance units observed a United Parcel Service truck park in front of the Tenino Avenue house. The record is unclear as to whether a delivery was made to Russell's residence. At 12:18 p.m., officers observed a yellow Cadillac arrive at Russell's house and saw three individuals of unknown iden-

tity go into the house. Upon checking the license plates, officers discovered that the vehicle was registered to David Tufts. Several minutes later, MacLaskey called Russell from the Safeway parking lot and was told to come to Russell's house. MacLaskey went to the house, where he was met by Russell and led to the kitchen. Russell then went to another part of the house and returned with a quantity of white powder in a cellophane bag. MacLaskey took a small sample of the powder and said he would take it to Evans for testing. MacLaskey left the house and drove to a location a few blocks away where Evans was waiting. Evans was told about what had transpired in the house, and he tested the white powder twice using a chemical field test. Both tests indicated that the powder was cocaine.

Evans testified that he put an empty briefcase in the trunk of MacLaskey's car and returned to the house with MacLaskey. Inside the house, Evans went to the kitchen with MacLaskey and Russell and was shown the cellophane bag containing white powder. After discovering that the bag weighed only four ounces, Evans complained that he wanted to purchase eight ounces of cocaine, not four ounces. Russell responded that if the present sale was satisfactorily completed, he would sell Evans four ounces of cocaine that evening. Evans then took a small sample of the cocaine to a bedroom in the house, telling Russell that he wanted to test the substance again. While in the bedroom, Evans used a wireless transmitter to inform surveillance officers outside of what was occurring in the house. When he returned to the kitchen, he told Russell he was going out to MacLaskey's car to get the money to pay for the cocaine. Evans retrieved the empty brief case from the trunk of the car and, again using his wireless transmitter, advised surveillance officers that he was

going back inside and needed cover. Two officers entered the house behind Evans with their service revolvers drawn. MacLaskey and Russell were standing in the doorway between the kitchen and the living room and were visible to the officers when they entered the house. The officers shouted that they were police officers and placed MacLaskey and Russell under arrest. The officers then proceeded through the house looking for other persons on the premises. One of the officers brought two women from the family room into the living room, where they were placed under arrest.[1] The other officer, Detective Kenneth Hall of the Boulder County Sheriff's Department, found two men subsequently identified as David Tufts and Paul Davidson in a room in the back of the house. Detective Hall testified at the suppression hearing that Davidson was standing near a window and appeared to be pushing against the screen. Tufts was sitting in a chair behind a desk. Hall placed the defendants under arrest and took them to the living room, where the other persons in the house had been assembled.

The defendants and the other persons arrested at the house were transported to the county jail, and the house was secured while Detective Hall prepared an affidavit and search warrant. The warrant was signed by a Boulder district judge and permitted a search of the house at 5450 Tenino Avenue and the yellow Cadillac parked across the street from the house.[2]

Officers conducting the search seized the cellophane bag containing the white powder, an electronic scale, a large amount of currency, a sawed-off shotgun, and other items in the house. In the room where the defendants were found, Detective Hall discovered a vinyl travel bag containing a loaded handgun and traces of white, crystalline powder.[3] After searching the

---

**1.** The two women lived in the house with Russell. They were not charged with any crime.

**2.** The warrant also authorized a search of two other vehicles parked in the driveway of the house. The searches of those automobiles are not at issue in this appeal.

**3.** Detective Hall testified that the bag was open when he discovered it. However, the trial court found that the contents of the bag were not in plain view, and the prosecution does not dispute this ruling.

house, Hall searched the Cadillac and discovered a vinyl attache case bearing Tufts' name. The attache case contained a holster which appeared to fit the handgun found in the bag in the house.

The handgun seized from the house was traced to Captain John Callahan of the Colorado State Patrol. At the suppression hearing, Callahan testified that defendant Tufts was his neighbor, and that Callahan had arranged a trade between Tufts and another police officer for the handgun several years previously. Officer Callahan stated that when he told Tufts that he had been contacted about the gun, Tufts asked him if he could keep Tufts' ownership of the gun secret.

Following the suppression hearing, the trial court found that there was no probable cause for the arrests of the defendants. The court also found that since probable cause did not exist for the arrests, probable cause did not support the search of the car registered to defendant Tufts, and that the search was the fruit of an illegal arrest. Additionally, the court found that the search of the bag was not included within the scope of the search warrant for the house. The trial court therefore suppressed the evidence obtained from the search of the bag and the car. The court also suppressed as fruits of the illegal arrests items seized from the defendants at the jail and the statements made by Tufts to Callahan. After the trial court declined to modify its rulings on the prosecution's motion for reconsideration, the prosecution brought this appeal pursuant to C.A.R. 4.1.

## II.

The prosecution first contends that both defendants lack standing to challenge the search of the vinyl bag, and that defendant Davidson does not have standing to challenge the search of the Cadillac registered to defendant Tufts. We disagree.

## A.

At the outset of the suppression hearing, the prosecution raised the standing issue and noted that the burden of proof was on the defendants to establish standing to challenge the legality of the searches. The trial court then requested defense counsel to disclose what evidence they would rely upon to demonstrate standing. Defense counsel responded with brief statements detailing their positions on the standing question. The trial court concluded that "there's enough by way of offer of proof for me to proceed with just hearing all the evidence and then making determinations about [standing] from the evidence that I hear." The court recognized that the ultimate burden of proving standing remained on the defendants.

The trial court then proceeded with the testimony of the prosecution's witnesses. Detective Hall testified that he believed the vinyl bag belonged to the defendants. He also said that he examined items taken from defendant Davidson at the jail and saw a number of key rings, one of which was for a "yellow Cadillac." The trial court found that the defendants had standing to challenge the search of the vinyl bag based on Detective Hall's testimony that he believed the bag belonged to the defendants. Relying on the fact that the keys to the Cadillac were found on Davidson's person, the court found that Davidson had standing to challenge the search of the car.

The prosecution asserts that the trial court should have required the defendants to introduce evidence demonstrating standing before hearing the testimony of the prosecution's witnesses. The proper procedure, according to the prosecution, is for a defendant to establish standing before the trial court considers evidence of the legality of the contested search. The prosecution's argument is without merit.

 As the trial court acknowledged, one who challenges the constitutionality of a search must demonstrate that he had a legitimate expectation of privacy in the area searched or the items seized. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Suttles,* 685 P.2d 183 (Colo.1984). However, we have never held that a trial court must proceed

in the fashion suggested by the prosecution in resolving the issue of standing. Trial courts must be accorded substantial discretion in the conduct of proceedings. To hold that a trial court must first decide the question of standing before entertaining any other evidence at a suppression hearing would result in bifurcated proceedings in which the evidence would often overlap. No good purpose would be served by such a rigid procedure and much time would be wasted by presentation of the same evidence twice. We therefore decline to impose the procedural requirement suggested by the prosecution. All that is required is that the trial court resolve the question of standing by applying the appropriate burden of proof.

### B.

The prosecution next contends that there was insufficient evidence to support the trial court's findings that the defendants had standing to contest the searches of the vinyl bag and the Cadillac. Specifically, the prosecution asserts that Detective Hall's testimony about the ownership of the bag was not competent to establish the defendants' standing, and that there was no evidence connecting Davidson to the bag. As to the car, the prosecution argues that Davidson's possession of keys to the vehicle was inadequate to show that he possessed a reasonable expectation of privacy in the contents of the car. We are unpersuaded by the prosecution's arguments.

■ The question of standing must be resolved in view of the totality of circumstances in a particular case. *People v. Suttles*, 685 P.2d at 183; *People v. Spies*, 200 Colo. 434, 615 P.2d 710 (1980). The evidence must show that the defendant had a legitimate expectation of privacy in the places searched and the items seized. *Rakas v. Illinois*, 439 U.S. at 128, 99 S.Ct. at 421; *People v. Suttles*, 685 P.2d at 183. Whether an expectation of privacy is "legitimate" is not determined by an individual's subjective expectations but is dependent upon objective factors. *Id.* Thus, Detective Hall's observations about the bag were competent evidence on the issue of standing. *Cf. People v. Suttles*, 685 P.2d at 183, 192 (Quinn, J., dissenting) (hearsay testimony by police officers as to statements made by defendant sufficient to establish standing to challenge seizure).

■ Detective Hall testified that the vinyl bag found in the room where the defendants were arrested was the only item in the room that appeared to belong to the defendants. Hall believed that everything else in the room was the property of the owner of the house. The bag was sitting on the floor near the point where Davidson had been standing. On the basis of Detective Hall's testimony, the trial court concluded that the bag belonged to the defendants. The trial court also found that the bag was closed when Detective Hall located it, which supported the conclusion that the defendants had a reasonable expectation of privacy in the contents of the bag. We will not disturb the trial court's finding that the defendants have standing to challenge the search of the bag, since the court's finding is supported by adequate evidence in the record.

With respect to the search of the car, Detective Hall testified that a set of keys for a "yellow Cadillac" were seized from defendant Davidson at the jail. The trial court concluded that Davidson had standing to contest the search of the car based on his possession of the keys. We agree.

■ In *Rakas v. Illinois*, 439 U.S. at 128, 99 S.Ct. at 421, the Supreme Court held that a passenger in an automobile who asserts neither a property nor a possessory interest in the vehicle, nor an interest in the property seized, does not have standing to contest a search of the car. *Accord People v. Suttles*, 685 P.2d at 183; *People v. Henry*, 631 P.2d 1122 (Colo.1981). In this case, however, Davidson's possession of keys to the automobile searched strongly suggests that he was not simply a passenger in the car. Rather, the evidence supports the inference that Davidson was permitted to use the car by the registered

owner, defendant Tufts. Under such circumstances, Davidson had a reasonable expectation of privacy in the contents of the car. We therefore conclude that Davidson has standing to challenge the search of the Cadillac.

### III.

The prosecution contends that the trial court erred in finding that there was no probable cause for the warrantless arrests of the defendants. We agree.

In support of its finding, the trial court observed that when MacLaskey called Russell from Agent Evans' office on the morning of September 20, Russell told MacLaskey to meet him at the Safeway parking lot. Commenting on this evidence, the court said: "I can't conclude anything from that, but that the cocaine must have been there when Mr. Russell went to the parking lot at Safeway." Noting that the yellow Cadillac arrived at the Tenino Avenue house after MacLaskey went to the Safeway parking lot, the court concluded that the source of the cocaine could not have been Tufts and Davidson. Therefore, the court found that there was no probable cause for the arrests of the defendants.

The burden of proof is on the prosecution to establish the existence of probable cause to support a warrantless arrest. *People v. Eichelberger*, 620 P.2d 1067 (Colo.1980). Although we will not ordinarily disturb a trial court's finding that probable cause to arrest was lacking, we conclude that the prosecution met its burden in this case.

Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been or is being committed by the person arrested. *Banks v. People*, 696 P.2d 293 (Colo.1985); *People v. Tottenhoff*, 691 P.2d 340 (Colo.1984); *People v. Florez*, 680 P.2d 219 (Colo.1984). In determining whether there was probable cause to arrest, the totality of facts and circumstances known to the officer at the time of the arrest must be considered. *People v. Hazelhurst*, 662 P.2d 1081 (Colo.1983). A court must consider, among other things, the arresting officer's training and experience in a particular area of law enforcement. *People v. Rueda*, 649 P.2d 1106 (Colo.1982). As the term suggests, probable cause deals with probabilities, not certainties. *People v. Weinert*, 174 Colo. 71, 482 P.2d 103 (1971). It is sufficient if the officer reasonably believed that the person arrested committed a crime.

While Detective Hall could have reasonably believed that Russell possessed the cocaine prior to the arrival of the yellow Cadillac, and that Russell intended to consummate the sale at the Safeway parking lot, other reasonable inferences could have been drawn from the facts known to Detective Hall at the time he arrested the defendants. Hall was aware that the source of the cocaine was a male individual or individuals who came from Denver to Boulder on the morning of September 20. Detective Hall also knew that Russell was having credit problems with his supplier. At the suppression hearing, Hall testified that he knew, based on his training and experience, that there was a substantial possibility under such circumstances that the supplier would be present at the sale to insure that he received the purchase money. A yellow Cadillac arrived at the Tenino Avenue house only minutes before Russell told MacLaskey to come to the house. Three persons were observed leaving the Cadillac and entering the house. Surveillance officers did not see anyone, except MacLaskey and Agent Evans, leave the house from that time until the arrests of the defendants. Detective Hall knew that shortly before he entered the house, Russell had brought a bag containing white powder from another part of the house into the kitchen and had offered to sell it to MacLaskey and then to Agent Evans, who had tested a sample from the bag and determined that the substance was cocaine. When Hall first observed the defendants in the house, Davidson appeared to be at-

tempting to flee from the house through a window.

In our view, the foregoing sequence of events established probable cause to believe that the defendants were involved in the cocaine transaction occurring at the Tenino Avenue residence. We therefore reverse the trial court's ruling that the arrests of the defendants were illegal.

### IV.

The prosecution also contends that the search of the vinyl bag found in the room where the defendants were arrested was pursuant to a valid search warrant based upon probable cause. The trial court, relying on *People v. Lujan,* 174 Colo. 554, 484 P.2d 1238 (1971), found that the bag was not included within the scope of the warrant. We disagree.

The validity of the search warrant is not contested. Therefore, we need only concern ourselves with the scope of the warrant. The warrant authorized police officers to search for:

Any and all controlled substances, any implements, tools, scales, or other items used to grow, dispense, distribute, use, store, sort, and sell any controlled substances ... any papers, receipts, records, or other items which would tend to indicate the ownership of the controlled substances or of the residence or indicate business transactions conducted involving the aforesaid controlled substances ... any monies, gems, securities, or other valuables which may be deemed to be the profits of the said transactions involving controlled substances.

Detective Hall testified that he searched the bag because he believed it might contain narcotics or narcotics-related items.

In our view, Detective Hall acted within the scope of the search warrant in searching the bag. The trial court's reliance on *Lujan,* 174 Colo. at 554, 484 P.2d at 1238, was misplaced. In *Lujan,* police officers obtained a search warrant for Lujan's house. After entering the premises, the officers discovered Lujan and Valdez, a visitor to the home. Lujan was arrested

for possession of marijuana, and Valdez was apparently detained on the premises during the search. While officers were searching the house, Valdez requested a hair brush from her purse. Although Valdez was not under arrest at the time, an officer conducted a detailed search of the purse before giving Valdez her hair brush and discovered contraband in a small, zippered, inner compartment. We held that the search of Valdez' purse was not included within the scope of the search warrant because the purse was the personal property of a guest on the premises.

██ Here, although the vinyl bag searched by Detective Hall was the personal property of visitors to a house subject to a search warrant, *Lujan* is not controlling. In *Lujan,* there was no probable cause to arrest Valdez prior to the search of her purse. Here, by contrast, the defendants were legally arrested before the intrusion into the bag. Since, as we have held, there was probable cause to believe that the defendants were involved in the cocaine transaction at the Tenino Avenue house, Detective Hall was authorized to search a bag on the premises that appeared to belong to the defendants for the items described in the search warrant.

### V.

Finally, the prosecution contends that the trial court erred in suppressing evidence obtained from the search of the yellow Cadillac. The trial court ruled that since there was no probable cause to arrest the defendants, there was no probable cause to search Tufts' car and the search was the fruit of an illegal arrest. Because we have concluded that probable cause existed to arrest the defendants, the trial court's ruling in this regard cannot stand. However, our inquiry does not end here since the trial court further concluded that even if the arrests were legal, the evidence obtained from the search of the Cadillac must nonetheless be suppressed because the affidavit in support of the search warrant did not establish probable cause to search the car.

Specifically, the trial court ruled that a statement in the affidavit attributed to an unnamed informant to the effect that Tufts was the owner of the Cadillac and the person who brought the cocaine into the Tenino Avenue house was unreliable.

 An affidavit which sets forth sufficient facts for a person of reasonable caution to believe that contraband or material evidence of criminal activity will be found in the place to be searched is sufficient to establish probable cause to support a search warrant. *People v. Hill,* 690 P.2d 856 (Colo.1984); *People v. Hearty,* 644 P.2d 302 (Colo.1982). Here, Detective Hall stated in detail the factual scenario leading to the arrests of the defendants at the Tenino Avenue house. The affidavit indicated that the yellow Cadillac arrived at the house approximately forty-five minutes after MacLaskey called Evans on the morning of September 20.[4] Detective Hall also stated in the affidavit that Tufts told him at the time of the arrest that he was the owner of the yellow Cadillac.

 In our view, the facts establishing probable cause to believe that Tufts was involved in the cocaine transaction, which were largely included in Detective Hall's affidavit, combined with Tufts' statement that he was the owner of the Cadillac, supported a reasonable belief that contraband or narcotics-related evidence would be found in Tufts' car. Therefore, we need not consider the reliability of the statement attributed to the unnamed informant in the affidavit. We conclude that the trial court erred in suppressing the evidence obtained in the search of the Cadillac.

## VI.

In summary, we hold that the defendants have standing to challenge the searches of the vinyl bag and the Cadillac; that the defendants' arrests were supported by probable cause; that the trial court erred in suppressing as fruits of an illegal arrest

items seized from the defendants prior to their incarceration, the search of the Cadillac, and the statements made by Tufts to Officer Callahan; that the search of the vinyl bag was within the scope of a valid premises search warrant; and that the search of the car was pursuant to a warrant supported by probable cause. Accordingly, the case is remanded to the trial court for further proceedings consistent with this opinion.

---

4. This statement conflicted with the testimony at the suppression hearing as to the time of the arrival of the Cadillac. However, the trial court concluded that the affidavit was not falsely prepared, and we find nothing in the record to suggest that Detective Hall acted recklessly in preparing the affidavit.