The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Wilbert WASHINGTON,
Defendant–Appellee.

No. 93SA176.

Supreme Court of Colorado,
En Banc.

Jan. 24, 1994.

A. William Ritter, Jr., Dist. Atty., Second Judicial District, Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, State Public Defender, Theodore Stavish, Deputy State Public Defender, Denver, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1986 & 1993 Supp.), seeking reversal of the trial court's ruling suppressing evidence discovered during a post-arrest search of the defendant's person. The trial court found that there was no indication that the defendant had solicited the purchase and sale of crack cocaine from an undercover police officer in violation of section 18–2–301, 8B C.R.S. (1986), and that therefore the police lacked probable cause to arrest the defendant. For the reasons stated below, we reverse the trial court's suppression order and remand the case for further proceedings consistent with this opinion.

I

At the suppression hearing on June 15, 1993, the trial court heard testimony from Officer Norman Pressley (Pressley) of the Drug Control Bureau of the Denver Police Department and from Wilbert Washington (the defendant). The trial court resolved the conflict between the testimony of the two witnesses by adopting Pressley's testimony in its order. The following facts were established.

On December 22, 1992, Pressley, operating undercover, arrived at 4172 Steele Street, a residence under investigation for the distribution and sale of crack cocaine. Two other officers stationed nearby used a recording device attached to Pressley to monitor his conversations within the house and had orders to intervene upon hearing a "buzz signal" indicating that Pressley needed assistance.

Responding to Pressley's knock on the rear door of the residence, Sherman Banks (Banks) invited Pressley inside and asked him if he was interested in purchasing some "tight white," a street term for crack cocaine. Pressley responded affirmatively. When Pressley entered the residence, two individuals were present besides Banks—the defendant and Charles Allison (Allison), both of whom were sitting on a couch in the living room. Pressley informed Banks that he wanted to purchase an ounce of crack cocaine, to which Banks replied that he could arrange for Pressley to purchase an ounce at the low price of $900.

Pressley told Banks that he felt uncomfortable having other people (referring to the defendant and Allison) in the house during the transaction. Banks responded that they were "cool" and could be trusted and that Allison was his nephew. Banks then introduced Pressley to the defendant and Allison. At this point, Banks told Pressley that he had to leave the room to use the telephone to contact his sources and that it would probably take an hour to obtain the crack cocaine.

While Banks was on the telephone, Pressley entered into a conversation with the defendant and Allison. Pressley told them that he was selling a large quantity of crack cocaine in Boulder. The defendant responded that he was trying to expand his own business in crack cocaine and that he formerly supplied and distributed drugs for the "Crips," a well-known gang organization. He also stated that he could offer a better price for the crack cocaine than the rate Pressley was paying to Banks. When Pressley appeared receptive to the offer, the defendant told him that his street name was "Curls" and wrote down his phone number. The defendant told Pressley that if he called him at that number and asked for "Curls," they could deal directly and Pressley could get several ounces of crack cocaine at a lower price than that offered by Banks.

Soon thereafter, the defendant and Allison left the residence. As a parting statement, the defendant told Pressley that he expected Pressley to call him so that the two could establish a business relationship. Minutes after leaving, the defendant and Allison apparently turned around and started to walk back towards the residence in question.

At this point, Banks' supplier, Calby Arnold (Arnold), arrived at the back door of the residence. Pressley recognized Arnold from previous transactions and knew that Arnold could identify him as an undercover police

officer. Although Arnold did not tell Banks about Pressley, he made gestures to Banks with his eyes and began to leave the premises. Pressley immediately gave the "buzz signal" to the officers monitoring the events, ordering them to apprehend the suspects departing from that location. The officers arrested all those inside the residence, including Pressley, and those who had recently departed, including the defendant and Allison. When the police searched the defendant incident to the arrest, they discovered 8.66 grams of cocaine in his pocket.

The district attorney subsequently charged the defendant with unlawful distribution, manufacturing, dispensing, sale and possession of a controlled substance pursuant to sections 18–18–203 to –207 and 18–18–405, 8B C.R.S. (1993 Supp.). The defendant moved to suppress the cocaine seized during the post-arrest search of his person on grounds that he had been "searched without probable cause or a valid exception to the requirement of probable cause." At the suppression hearing the trial judge and the parties agreed that the sole issue in controversy was whether the police had probable cause to arrest the defendant.

At the conclusion of the hearing, the trial judge found that "[t]here's no indication of any kind that Mr. Washington was attempting to induce [Pressley] to do anything other than that which he pretended to already be doing, namely, dealing drugs, therefore, there's no probable cause." When the deputy district attorney inquired as to when an offer to sell drugs would become a solicitation for purposes of section 18–2–301,[1] the trial court indicated that a solicitation occurs when the conduct in question amounts to an "attempt," that is, where there is more than "mere preparation." The trial court concluded that although probable cause existed to arrest Banks and Arnold, because the conversation between Pressley and the defendant did not constitute a solicitation, there was no probable cause to arrest the defendant.

II

To be valid, an arrest must be supported by probable cause. *People v. Thompson*, 793 P.2d 1173, 1175 (Colo.1990). The burden of proof is on the prosecution to establish probable cause to support a warrantless arrest. *People v. Tufts*, 717 P.2d 485, 491 (Colo.1986). Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been or is being committed by the person arrested. *People v. Diaz*, 793 P.2d 1181, 1183 (Colo.1990); *Tufts*, 717 P.2d at 491. In determining whether there is probable cause to arrest, the totality of facts and circumstances known to the officer at the time of arrest must be considered.[2] *Diaz*, 793 P.2d at 1183.

As the term suggests, probable cause deals with probabilities, not certainties, and it is sufficient if the officer reasonably believed that the person arrested committed a crime. *Tufts*, 717 P.2d at 491. Although we will not ordinarily disturb a trial court's finding that probable cause to arrest was lacking, *id.*, the record compels the conclusion that the prosecution met its burden in this case.

---

1. Section 18–2–301, 8B C.R.S. (1986), states in relevant part:

   **Criminal solicitation.** (1) Except as to bona fide acts of persons authorized by law to investigate and detect the commission of offenses by others, a person is guilty of criminal solicitation if he commands, induces, entreats, or otherwise attempts to persuade another person to commit a felony, whether as principal or accomplice, with intent to promote or facilitate the commission of that crime, and under circumstances strongly corroborative of that intent.

2. The "fellow officer" rule provides that an arresting officer who does not personally possess sufficient information to constitute probable cause may nevertheless make a warrantless arrest if "(1) he acts upon the direction or as a result of a communication from a fellow officer, and (2) the police, as a whole, possess sufficient information to constitute probable cause." *Thompson*, 793 P.2d at 1175 (quoting *People v. Baca*, 198 Colo. 399, 401, 600 P.2d 770, 771 (1979)). In this case, it is undisputed that the officer who arrested the defendant was acting upon the direction and as a result of a communication from Pressley. Therefore, the question before us is whether Pressley had a reasonable belief that the defendant had committed the crime of solicitation.

*Cf. People v. Rayford,* 725 P.2d 1142, 1146–48 (Colo.1986) (reversing trial court's finding that arrest not supported by probable cause); *Tufts,* 717 P.2d at 491–92 (same).

■ The trial court based its suppression order on the fact that, in its view, the defendant's conduct fell short of establishing his guilt under the solicitation statute.[3] Proof of guilt is not the correct legal standard. The United States Supreme Court has long held that "'the term 'probable cause' ... means less than evidence which would justify condemnation.'" *United States v. Ventresca,* 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965) (quoting *Locke v. United States,* 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813)); *Brinegar v. United States,* 338 U.S. 160, 172–174, 69 S.Ct. 1302, 1309–10, 93 L.Ed. 1879 (1949) (discussing the "difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt"). In fact, "[t]he amount and quality of information necessary for probable cause to make a warrantless arrest is neither greater nor less than that needed for a magistrate to validly issue a warrant, but is *significantly less* than what is necessary to prove an accused's guilt." *United States v. Fox,* 902 F.2d 1508, 1513 (10th Cir.), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990) (quoting *United States v. Swingler,* 758 F.2d 477, 486 (10th Cir.1985)) (citations omitted) (emphasis added).

■ The trial court's failure to apply the correct standard for probable cause may have been caused in part by its confusion of the elements of criminal solicitation with the elements of criminal attempt. For example, the trial court incorrectly suggested that in order to prove criminal solicitation, the prosecution must first prove that the defendant's conduct amounted to "more than 'mere preparation'" to commit the underlying offense. Although it is true that criminal attempt requires proof of such an element, *see* § 18–2–101(1)–(2), 8B C.R.S. (1986), a determination of whether a defendant committed the offense of criminal solicitation is made without reference to the degree of "preparation" involved. § 18–2–301(1). Rather, the test

for solicitation is whether the defendant's efforts to persuade another to commit a felony were done "under circumstances strongly corroborative of that intent." *Id.*

■ Moreover, the trial court apparently believed that since the defendant was only attempting to induce Pressley to do "that which he [Pressley] pretended [as an undercover officer] to already be doing, namely, dealing drugs," the defendant was somehow incapable of committing criminal solicitation. This is unsupported in the law. The identity or motive of the person solicited is simply irrelevant to the question of whether the solicitor has violated the statute. § 18–2–301; *State v. Sage,* 255 Mont. 227, 841 P.2d 1142, 1143 (1992); *Luzarraga v. State,* 575 So.2d 731, 732 (Fla.Dist.Ct.App.1991). Therefore, contrary to the trial court's suggestion, the fact that Pressley was "passing himself off as a drug dealer" cannot affect the question of whether the police had probable cause to arrest the defendant for the crime of solicitation.

■ The proper test for determining whether Pressley had probable cause to believe that a crime had been committed is whether, under the totality of the circumstances, a reasonable person in Pressley's situation would believe that the defendant had induced or otherwise attempted to persuade Pressley to commit a felony "with intent to promote or facilitate the commission of that crime, and under circumstances strongly corroborative of that intent." § 18–2–301(1). Applying this test, we conclude that it was reasonable for Pressley to believe that the defendant had committed criminal solicitation.

The evidence in the record amply corroborates the defendant's stated intent to induce Pressley to purchase crack cocaine from him. For example, the defendant made the offer to sell crack cocaine to Pressley while another similar drug transaction was in progress in the same room. Moreover, he gave Pressley his phone number and street name for the express purpose of conducting drug transactions. He also told Pressley that he

---

**3.** The trial court rejected the deputy district attorney's suggestion that probable cause was established by stating, "I don't think that's a solicitation."

previously distributed drugs for a major gang organization and that he expected Pressley to call him in order to execute the proposed deal at a price less than $900 per ounce.

We disagree with the defendant's view that to find probable cause in this case would be to deem the defendant "guilty merely by association with Banks and Banks' household." Although there may be some question whether the defendant could have been *convicted*[4] under the solicitation statute, the police need not prove every element of the crime beyond a reasonable doubt in order to establish *probable cause* to arrest. *Fox*, 902 F.2d at 1513. Accordingly, we reverse the trial court's suppression order and remand the case for further proceedings consistent with this opinion.

4. Where a defendant is prosecuted for the crime of solicitation, it is for the jury to determine whether the circumstances shown by the prosecution were "strongly corroborative" of the alleged intent. *People v. Latsis*, 195 Colo. 411, 414, 578 P.2d 1055, 1058 (1978). This corroboration element serves to protect persons "whose actions may have been innocently motivated or done in jest." *People v. Aalbu*, 696 P.2d 796, 805 (Colo.1985).