**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Hughy DICKINSON, Defendant–Appellee.**

**No. 96SA368.**

Supreme Court of Colorado,
En Banc.

Dec. 16, 1996.

---

Sarah F. Law, District Attorney, Sixth Judicial District, Durango, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Guillermo Garibay, Deputy State Public Defender, Durango, for Defendant–Appellee.

Chief Justice VOLLACK delivered the Opinion of the Court.

In this interlocutory appeal, the People seek review of an order entered by the La Plata County District Court suppressing evidence and observations which were the result of a police contact and subsequent arrest. We reverse the trial court's ruling.

## I.

On the night of Friday, June 7, 1996, Officer Deck Shaline (Officer Shaline) and Officer Lars Helton (Officer Helton) were on bicycle patrol in the downtown Durango area.

At approximately 10:00 p.m., the officers approached a parking lot which was not well lit. The officers observed two men, Steven Payne (Payne) and the defendant, Hughy Dickinson (Dickinson), sitting in a parked automobile in the lot. The automobile's engine was not running, the headlights were turned off, and the two men appeared to be bent over something in the front seat.

Officer Shaline approached the driver's side window which appeared to be broken out or open. When Officer Shaline approached the window, he shined his flashlight in the vehicle and observed both men with cash in their hands. Officer Shaline also observed Dickinson, who was in the front passenger seat, holding a small plastic bag containing a white powdery substance. Dickinson cupped the small bag in his hand, and Officer Shaline ordered Dickinson to show what he had in his hand.[1] After Officer Shaline repeated his order several times, Dickinson dropped the small bag between his legs and showed the officer his empty hands. Officer Shaline then ordered Dickinson to show what he had dropped, whereupon Dickinson grabbed the bag, shoved it into his mouth, exited the vehicle, and fled.

Officer Shaline then chased Dickinson and grabbed his throat to prevent him from swallowing the bag. Dickinson struggled with Officer Shaline until Dickinson swallowed the bag, at which time the officer placed him under arrest. In the meantime, Officer Helton secured the arrest of the vehicle's driver, Payne.

Dickinson was subsequently charged with criminal attempt to distribute a schedule II controlled substance, tampering with physical evidence, and resisting arrest. After Dickinson moved to suppress all of the evidence, the trial court granted his motion, finding that (a) Dickinson had a reasonable expectation of privacy in the vehicle; (b) Officer Shaline approached the vehicle without reasonable suspicion of criminal activity; and (c) Officer Shaline improperly searched the vehicle by shining a flashlight into it.

## II.

The first issue before us is whether Officer Shaline properly initiated contact with Dickinson and Payne by approaching the vehicle in which they sat.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that law enforcement personnel may, in compliance with the Fourth Amendment, conduct brief investigatory stops based on reasonable suspicion. *Id.* at 30–31, 88 S.Ct. at 1884–85. Additionally, the Court stated that some encounters between the police and citizens do not implicate the Fourth Amendment:

> [N]ot all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16. Hence, the United States Supreme Court has held that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983). Moreover, the mere fact that an officer identifies himself as a police officer, without more, does not convert the encounter into a seizure. *Id.*

■ Colorado case law is consistent with the United States Supreme Court's decisions and recognizes the existence of police-citizen encounters which do not implicate the protections of Article II, Section 7, of the Colorado Constitution or the Fourth Amendment of the United States Constitution. *People v. Johnson*, 865 P.2d 836, 842 (Colo.1994). Encounters which do not trigger constitutional protections are those "'in which no restraint of the liberty of the citizen is implicated.'" *People v. Trujillo*, 773 P.2d 1086, 1089 (Colo. 1989) (quoting *United States v. Black*, 675

---

1. Although Officer Shaline identified himself as a police officer at some point after approaching the vehicle, it is unclear from the record when he did so.

F.2d 129, 133 (7th Cir.1982)); *see also People v. T.H.*, 892 P.2d 301 (Colo.1995).

■ In the current case, the trial court granted Dickinson's motion to suppress based on its conclusion that Officer Shaline did not have reasonable suspicion sufficient to justify approaching the vehicle in which Dickinson and Payne sat. We reverse because Officer Shaline's action of merely approaching the vehicle and identifying himself as a police officer did not implicate the protections of the Fourth Amendment. The officer did not restrain the liberty of the vehicle's occupants by merely approaching them; the encounter therefore did not rise to the level of an investigatory stop. As such, the trial court erroneously applied the reasonable suspicion standard to evaluate Officer Shaline's initial contact with the vehicle's occupants. We hold that the police officer's initial contact with Dickinson and Payne was proper because it did not violate any constitutional protections.

### III.

The next issue for our determination is whether Officer Shaline's use of a flashlight to illuminate the inside of the vehicle after he approached it was constitutionally permissible.

The United States Supreme Court has held that shining a flashlight to illuminate the interior of a vehicle or building does not constitute a search that triggers Fourth Amendment protections. *United States v. Dunn*, 480 U.S. 294, 305, 107 S.Ct. 1134, 1141–42, 94 L.Ed.2d 326 (1987); *Texas v. Brown*, 460 U.S. 730, 739–40, 103 S.Ct. 1535, 1541–42, 75 L.Ed.2d 502 (1983). Additionally, there is no legitimate expectation of privacy in the interior of an automobile when it may be viewed from outside the vehicle by either passersby or police officers. *Brown,* 460 U.S. at 740, 103 S.Ct. at 1542. Likewise, we have held that the mere observation by government officials of that which is plainly visible to anyone does not constitute a search

for constitutional purposes. *Hoffman v. People*, 780 P.2d 471, 473 (Colo.1989). Moreover, a police officer's use of a flashlight to illuminate the inside of a vehicle does not cause the officer's viewing to become a search. *People v. Romero*, 767 P.2d 1225, 1227 (Colo.1989). We have noted that in determining whether a police officer is conducting a "search" within the meaning of the Fourth Amendment, it is not determinative if the officer shines a flashlight on the object. *Henderson v. People*, 879 P.2d 383, 389–90 n. 8 (Colo.1994).

■ In the current case, Officer Shaline shined his flashlight into the vehicle as he approached it and made observations of items which were plainly visible to anyone.[2] This action, by itself, does not constitute a search of the vehicle. As such, the trial court erroneously determined that Officer Shaline "was not justified in the flashlight search of the car." We therefore hold that Officer Shaline's use of a flashlight to illuminate the interior of the vehicle was proper and did not implicate Fourth Amendment protections.

### IV.

We next determine whether Officer Shaline had probable cause to arrest Dickinson after he approached the vehicle and illuminated the vehicle's interior with his flashlight.

■ To be valid, a warrantless arrest must be supported by probable cause. *People v. Washington*, 865 P.2d 145, 147 (Colo. 1994). Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been or is being committed by the person arrested. *Id.* In determining whether there is probable cause to arrest, the totality of circumstances known to the officer at the time of arrest must be considered. *Id.* As the term suggests, probable cause deals with probabili-

---

**2.** The vehicle in this case was parked in a lot open to the public.

ties, not certainties, and it is sufficient if the officer reasonably believed that the person arrested committed a crime. *Id.*

■ In the current case, Officer Shaline approached the vehicle and shined his flashlight into its interior. He then observed Dickinson and Payne holding cash in their hands, and also observed Dickinson holding a small plastic bag containing a white powdery substance. These facts and circumstances were sufficient to support a reasonable belief by Officer Shaline that a crime related to controlled substances had been or was being committed by Dickinson. Consequently, Officer Shaline had probable cause to arrest Dickinson at that time.

### V.

In summary, Officer Shaline's conduct did not implicate Fourth Amendment protections when he approached the vehicle in which Dickinson and Payne sat because this action did not constitute an investigatory stop. Officer Shaline's conduct similarly did not implicate the Fourth Amendment when he shined his flashlight into the vehicle because this action did not constitute a search. When Officer Shaline observed Dickinson holding the cash and the small plastic bag containing a powdery white substance, he had probable cause to arrest Dickinson. We therefore reverse the trial court's suppression of the observations and evidence which were the result of the police contact and subsequent arrest.

SCOTT, J., specially concurs.

Justice SCOTT, specially concurring:

I join in the judgment, and agree with much set forth in the majority opinion rejecting defendant Hughy Dickinson's claim to a constitutionally protected reasonable expectation of privacy and concluding that the police intrusion here did not unconstitutionally compromise any privacy interest recognized under the Fourth Amendment. I write separately to make clear that, in my view,

the determination as to whether the use of a flashlight to illuminate the interior of a car constitutes a search is not controlling as to our deliberations. After examining all the facts and circumstances present here, I believe that the search was reasonable and therefore not prohibited by the Fourth Amendment. Hence, I agree with the majority's judgment and its opinion that the ruling of the trial court should be reversed.

The undisputed facts indicate that Officer Deck Shaline and Officer Lars Helton were patrolling the public parking lot on bicycles and, while properly engaged in that patrol activity, came upon Dickinson's parked car and, with the aid of a flashlight, viewed the interior of the car and saw the defendant engaged in suspicious conduct. Despite his claims to the contrary, Dickinson had no reasonable expectation of privacy in the area of his car, in clear view of anyone passing by, that would constitutionally shield him from the consequences of the patrol activity of the police, even though the officer's vision was aided by the illumination of a flashlight. Accordingly, I specially concur as to Part III of the majority opinion and join in the judgment as well as all other portions of the opinion.

### I

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure ... against unreasonable searches and seizures." U.S. Const. amend. IV. "The basic purpose of [the Fourth Amendment] is to safeguard the privacy ... of individuals against arbitrary invasions by government officials." *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). However, the Fourth Amendment does not make unconstitutional all police conduct engaged in during police-citizen encounters, *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968); *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983), nor does the Fourth Amendment prohibit *all* searches. What the Fourth Amendment does prohibit is *unreasonable* searches.

We have long held that the "touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, —— U.S. ——, ——, 117 S.Ct. 417, 421, —— L.Ed.2d —— (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991)). The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *see also Vernonia Sch. Dist. 47J v. Acton*, —— U.S. ——, ——, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564 (1995) ("The ultimate measure of the constitutionality of a governmental search is reasonableness."); *Jimeno*, 500 U.S. at 250, 111 S.Ct. at 1803 ("The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."); *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960) ("It must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures."); *United States v. Rabinowitz*, 339 U.S. 56, 60, 70 S.Ct. 430, 432, 94 L.Ed. 653 (1950) ("It is unreasonable searches that are prohibited by the Fourth Amendment."); *Carroll v. United States*, 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925) ("The Fourth Amendment does not denounce all searches or seizures, but only such as are unreasonable.").

Under Supreme Court precedent, which is binding upon us here,[1] we must examine the facts and circumstances surrounding the search to determine whether it was reasonable. What is a reasonable search is not to be determined by any fixed formula. *Rabinowitz*, 339 U.S. at 63, 70 S.Ct. at 434. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. *Id.* Reasonable-

ness, in turn, is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, —— U.S. at ——, 117 S.Ct. at 421; *see also United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985).

## II

The majority holds that the actions of the police shining a flashlight into a vehicle when approaching a citizen to make "observations of items which were plainly visible to anyone, ... does not constitute a search of the vehicle." Maj. op. at 1312. The majority cites *United States v. Dunn*, 480 U.S. 294, 305, 107 S.Ct. 1134, 1141–42, 94 L.Ed.2d 326 (1987), *Texas v. Brown*, 460 U.S. 730, 739–40, 103 S.Ct. 1535, 1541–42, 75 L.Ed.2d 502 (1983), and *People v. Romero*, 767 P.2d 1225, 1227 (Colo.1989), for the proposition that using a flashlight to illuminate the interior of a car "does not constitute a search that triggers Fourth Amendment protections." Maj. op. at 1312. It is that portion of the majority's opinion that I do not join. I am not unmindful of our holding in *People v. Romero*, 767 P.2d 1225, 1227 (Colo.1989), that a "[police officer's] observations through [a] car window were not a search." In *Romero*, we also noted that "[t]he fact that a police officer uses a flashlight to look into the car does not cause her viewing to become a search." *Id.* To support that proposition, we cited *United States v. Dunn*, 480 U.S. 294, 305, 107 S.Ct. 1134, 1141–42, 94 L.Ed.2d 326 (1987), holding that "it is 'beyond dispute' that the action of a police officer in shining his flashlight to illuminate the interior of a car, without probable cause to search the car, 'trenched upon no right secured ... by the Fourth Amendment.'" However, concluding the use of a flashlight to illuminate the interior of a car does not "trench[ ] upon ... right[s] secured

---

1. Because we review this case principally based upon the United States Constitution and not based on rights created or expanded by our state constitution, we are bound not by our own precedent but by the construction placed upon the federal constitution by the United States Supreme Court. *See Ohio v. Robinette*, —— U.S. at ——, 117 S.Ct. at 420 (holding that when a state

court decision fairly appears to rest primarily on federal law, the Court will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so); *Illinois v. Rodriguez*, 497 U.S. 177, 182, 110 S.Ct. 2793, 2798, 111 L.Ed.2d 148 (1990) (same).

... by the Fourth Amendment," in my view, does not necessarily require a determination that no search occurs.

I agree with the majority when it concludes that the "use of a flashlight to illuminate the interior of the vehicle was proper and did not implicate Fourth Amendment protections." *Id.* Nonetheless, in my view, the conduct of the police *does* constitute a search; however, it is not an "unreasonable search."

In *Hoffman v. People,* 780 P.2d 471, 474 (Colo.1989), we summarized the well-settled principles by which Fourth Amendment considerations are to be examined:

> The touchstone of fourth amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy" in the area or item searched or seized. That determination requires the court to ascertain whether an individual has exhibited a subjective expectation of privacy in the particular place or object in question and whether that subjective expectation is one society recognizes as reasonable. The existence of a legitimate expectation of privacy must be determined after examining all the facts and circumstances in each particular case.

(Citations omitted.)

While I agree that the police officer's conduct here did not violate the Fourth Amendment, I would hold that the police officer's use of a flashlight to view the interior of the car did in fact constitute a search that requires application of the standards repeated in *Hoffman* under our Fourth Amendment jurisprudence established by the Supreme Court. In my view, all searches implicate the Fourth Amendment.[2] However, not all searches violate the guarantees found in the Fourth Amendment of the Constitution because not all searches are unreasonable. There are circumstances such as those present here, in which a search may be deemed reasonable and therefore not violative of the Fourth Amendment.

In my view, Dickinson had no reasonable expectation of privacy because he was in his car in a public parking lot and the items in the car were in plain view. The police officers, in effect, conducted a search of the car when they looked into the car with the aid of a flashlight. The police officer's search, however, was not unreasonable because (1) while lawfully conducting a bicycle patrol, the police officers had a right to be in the public parking lot as any other passersby; (2) Dickinson had no reasonable expectation of privacy in that portion of the interior of his car open to public view; and (3) the police officer's observance of Dickinson's actions in plain view, even with the aid of the flashlight, were not so intrusive as to be deemed unreasonable. Thus, in effect, I conclude that the police officer's flashlight search was reasonable and did not violate the Fourth Amendment.

For the foregoing reasons, I join in the result reached by the majority with the exception of Part III with which I specially concur because I would hold that a search, though reasonable, did in fact occur.

---

**2.** To implicate means "to involve as a consequence, corollary, or natural inference." Web-
ster's Ninth New Collegiate Dictionary 605 (1985).